[Civ. No. 19477. Second Dist., Div. Three. Dec. 21, 1953.]

ROSELEAF CORPORATION, Respondent, v. MAX RADIS et al., Appellants.

Martin Goldman in pro. per., Alvin P. Jackson, Benjamin J. Goodman, Victor J. Obegi and Jess F. High for Appellants.

Pacht, Tannenbaum & Ross, Clore Warne and Leo Alt-shuler for Respondent.

SHINN, P. J.—By the judgment in this action it was declared that defendants Max Radis, Jean Radis, Martin Goldman and Sylvia Goldman, should credit $3,824 and interest upon the principal of a trust deed note of $65,500, executed by plaintiff's predecessors, Isadore Rosenblot and Dora Rosenblot, in favor of said defendants. The credit was to be made by defendants within 10 days, or in case of default, by a commissioner, and if the credit should not be made plaintiff was to have execution for the amount of the judgment. Plaintiff also recovered judgment against defendant Victor Malley in the sum of $5,844, plus interest, but it was provided that if the credit on the note was entered, or if plaintiff recovered $3,824 from the four defendants above named, the amount of the credit or the amount collected from said defendants should be credited on the judgment against Malley; otherwise, plaintiff should have execution against Malley for the total amount of the judgment. Defendants Radis and Goldman appeal, and Malley appeals separately. The record on appeal consists of a clerk's transcript and certain exhibits. We will hereafter refer to defendants Radis and Goldman as appellants.

As to appellants, liability was imposed by reason of an agreement contained in a trust deed executed by them in favor of Malley by which they promised to pay the cost of refinancing encumbrances upon a property known as the Hollywood-Melrose Hotel and a second agreement in which they made the same promise to plaintiff's predecessor, Rosenblot. The basis of the judgment against Malley was false and fraudulent representations made to plaintiff by reason of which it refinanced the encumbrances on the hotel at a cost of $5,844.

On or about November 26, 1946, appellants acquired title to the Hollywood-Melrose Hotel property by purchase from defendant Malley, and as a part of the purchase price they executed their note dated August 13, 1946, in favor of Malley, for $146,500, secured by a trust deed on the hotel property. At that time there were prior encumbrances consisting of trust deeds, the beneficiaries and original amounts being Ohio National Life Insurance Company $60,000, Laura J. Hinkle $12,675, and Herbert A. McCallister $6,500, or a total of $79,175. Appellants' trust deed to Malley contained a pro-

vision for refinancing the encumbrances.[1]. The clear meaning is that both trustor and beneficiary would accept a new loan on the specified terms and conditions.

On July 23, 1948, appellants sold the property to Isadore Rosenblot and his wife Dora, subject to the four trust deeds, and in this transaction the Rosenblots gave their promissory note to the sellers in the amount of $65,500, secured by a fifth trust deed on the property. This trust deed provided: "Trustor is to receive a credit on the note secured hereby for any refinancing expenses, costs, bonuses or premiums incurred by trustor under the provisions of said One Hundred Forty-Six Thousand, Five Hundred Dollar ($146,500) trust deed of record, such credit to apply on the current installments of principal and interest on the note secured hereby." On July 30, 1948, the Rosenblots conveyed the property to plaintiff, Roseleaf Corporation, subject to the five trust deeds.

On November 8, 1948, Malley negotiated and plaintiff accepted a new loan with the firm of Salk, Ward & Salk as lendor, for $125,000, secured by a first deed of trust on the hotel property and a $25,000 third trust deed on the property

---

[1] "The parties hereto, in consideration of the mutual benefits accruing to them, agree that in the event the Beneficiary can arrange for a loan for Trustor not exceeding $75,000 at a rate of interest not exceeding 5% per annum, to be evidenced by a note signed by the Trustor and the Beneficiary as co-makers thereof, the Beneficiary will accept such loan, and the Beneficiary will execute and deliver to the lenders of such loan such note and trust deed, and any and all other instruments and documents required by such lender, including also a chattel mortgage on the goods and chattels now used in the hotel on the above mentioned real property and upon such goods and chattels as may be brought into said hotel in replacement and in substitution of the foregoing goods and chattels and in addition thereto, such new trust deed to replace the aforementioned encumbrances hereinabove enumerated and to become and remain a lien, prior and superior to the within trust deed; that any such new trust deed shall contain a recital that it is given in compliance with this agreement and shall be duly recorded in the office of the Recorder of Los Angeles County, provided, however, that the monthly payments on account of principal and interest on such new note and trust deed shall not exceed the total monthly payments of principal and interest now payable on the aforementioned existing encumbrances; and, provided further that the Trustor shall pay any and all costs and expenses incurred in connection with such new loan, including also any bonuses and/or premiums, if any, required to be paid to the holders of the aforementioned encumbrances in order to have the aforementioned encumbrances paid and discharged; and, provided further that any amount of such new loan in excess of the total amount required for the payment of the balance of principal and interest on the aforementioned encumbrances shall be paid to the Beneficiary on account of principal of the note secured by the within trust deed, and the Trustor shall be credited with such payment on account thereof."

known as the Barker Hotel, which also was owned by plaintiff. From the proceeds of the $125,000 loan the Ohio National and Hinkle trust deeds were paid off, the McCallister trust deed having already been paid; Malley received in cash $64,723.48 and a new trust deed for $20,000, being the balance unpaid of the $146,500 trust deed. Appellants subordinated their $65,500 trust deed to the $125,000 trust deed, and Malley subordinated his new trust deed to the one held by appellants. The encumbrances then were: A first of $125,000; a second of the balance unpaid on the $65,500 trust deed; and a third of $20,000 in favor of Malley. In this refinancing the expenses paid by plaintiff amounted to $5,844. These consisted of a commission for obtaining the loan, fee for policy of title insurance, escrow fee and miscellaneous expenses.

By its findings and conclusions the trial court determined that plaintiff had demanded and been refused a credit on the note held by appellants and that appellants were obligated to plaintiff in the amount of expenses that would have been incurred had the refinancing been for the sum of $75,000. This amount was found to be $3,824, which was the amount of the judgment against appellants.

The record on appeal consists of the clerk's transcript.

The complaint set out the agreement of appellants with Malley, the later agreement with Rosenblot and the furnishing of the refinancing, but did not allege exact performance by plaintiff. Upon the contrary, it listed seven particulars, including an increase in the amount from $75,000 to $125,000 in which the terms of the new loan differed from those specified in the agreement. It alleged that the loan was arranged pursuant to the refinancing agreement, that appellants accepted it, orally waived compliance with the terms specified for a new loan in all particulars in which there was non-conformance, and in writing subordinated their trust deed to the new trust deed. It pleaded that appellants were estopped to deny liability. The answer of appellants admitted they had accepted the new loan and subordinated their trust deed thereto, but denied that it was provided or accepted pursuant to the agreements for refinancing, and denied they had waived any of the conditions of their agreement with Malley.

The findings to be presently considered on the appeal of Radis and Goldman are: (XV) "On or about December 20, 1948, and as a part of said refinancing transaction, the defendants Radis and Goldman did agree in writing in a document entitled 'Subordination Agreement,' that the deed of trust

in their favor against said property should be inferior and subordinate to said new loan of $125,000.00, and did in said written agreement approve of the execution of said new loan in the amount of $125,000.00 as a first lien against said property. Said new loan was consummated and the costs and expenses in connection therewith were incurred by plaintiff''; (XVI) ''The defendants Radis and Goldman did not waive any of the conditions of the $146,500.00 trust deed, orally or in writing''; (XVIII) ''Defendants Radis and Goldman have not been estopped by any act or conduct of said defendants.'' It was also found that Radis and Goldman suffered no ''monetary nor any damage'' by reason of the fact that the new loan did not conform to the terms and provisions specified in the Malley trust deed.

Since voluntary acceptance of the new loan, as found by the court, was indisputably a waiver of appellants' right to refuse a new loan in an amount exceeding $75,000, the finding that they did not waive any of the conditions of the trust deed could mean only that they did not accept the new loan as full performance by plaintiff and Malley, but as imperfect performance, with a reservation of the right to claim damages for failure of plaintiff to render full performance. This interpretation is consistent with the fact that the question of appellants' damage was tried and determined as a matter in issue. The significance of these admitted facts and findings will be discussed later.

From the facts found the court drew the following conclusions: I. ''The terms and provisions found in the $146,-500.00 trust deed, providing for refinancing, were not conditions precedent to the obligations of defendants Radis and Goldman, but were promises, the breach of any of said promises not excusing said defendants from performance, but allowing said defendants a credit to the extent they were able to show monetary damage by reason of said breach''; II. ''In the refinancing agreement made in the said $146,500.00 trust deed, the defendants Radis and Goldman agreed to pay for all of the refinancing costs and expenses in connection with refinancing the hotel property up to the sum of $75,000.00, and that the refinancing costs in that respect amounted to $3,-824.00''; VII. ''Construing the terms of the $146,500.00 deed of trust and the $65,500.00 deed of trust together, defendants Radis and Goldman agreed to credit to plaintiff on their note for $65,500.00 the refinancing costs in connection with refinancing up to $75,000.00.''

■ Plaintiff says these three statements of conclusions were findings of fact and that it must be presumed there was evidence to support them under the rule that were the evidence is not brought up it will be presumed that it was sufficient to support the findings. (*Transportation Guar. Co.* v. *Jellins,* 29 Cal.2d 242 [174 P.2d 625]; *Freeman* v. *Gray-Cowan, Inc.,* 219 Cal. 85 [25 P.2d 415].) The rule has no application.

The conclusions were not misplaced findings, but only the court's interpretation of the agreements. Conclusions II and VII are merely incomplete recitals of the terms of the agreements and do not purport to be findings of any facts that were not admitted or otherwise found. There was an express finding that the expense of financing to the amount of $75,-000 was $3,824. Conclusion I was only an interpretation of the terms and provisions of the agreement with Malley drawn from the writings themselves without resort to extrinsic evidence. For an additional reason the presumption is inapplicable. Plaintiff pleaded the agreements *in haec verba.* There was no claim of mistake or other ground for the receipt of evidence that the understanding of the parties was different from that expressed in the writing. Extrinsic evidence would not have been admissible to prove that the parties understood from the writing that appellants would be obliged to accept a loan in an amount exceeding $75,000, or at interest above 5 per cent per annum, or one on which the payments would exceed the limitation specified in the agreement. ■ Where extrinsic evidence would be incompetent to add to or vary the terms of a written agreement because it is clear and complete as to the subjects to which it relates, it may not be presumed that such inadmissible evidence was received. To presume that the court received evidence tending to prove that the parties had an understanding different from the one they stated clearly in the agreement would be to presume that the court committed serious error. Error will not be presumed. (4 Cal.Jur.2d, § 559, p. 426.)

■ We think conclusion I was in error. There is nothing whatever ambiguous in the provision that appellants would accept a loan "not exceeding $75,000 at a rate of interest not exceeding 5 per cent per annum" and the further provision that the monthly payments should not exceed those of the existing encumbrances. Appellants agreed to pay only the expenses incurred "in connection with such new loan." They had an absolute right to refuse a new loan which differed substantially from the terms specified in the Malley agreement.

If these terms and provisions were merely covenants, appellants would have been obliged to accept and pay for a new loan unlimited as to amount, rate of interest and monthly payments. They made no such agreement. It may be mentioned again that the complaint alleged there were certain conditions to be met which appellants waived. And in finding against the allegation of waiver the court found that appellants did not waive any of the "conditions" of the agreement. Clearly the terms of the proposed new loan were specified as conditions upon which appellants' acceptance depended.

Plaintiff contends the judgment is a proper one under the conclusion (erroneously called a finding) that the terms and provisions of the writing were covenants and not conditions. If the conclusion had been a correct one it would have justified a recovery by plaintiff, but the judgment is erroneous if it is not otherwise supported.

A question of major importance was whether the refinancing was arranged by Malley and plaintiff, and accepted by appellants, by way of performance under the original agreement, or was an entirely unrelated and independent arrangement which was of no benefit to appellants and under which they assumed no liability. As noted above, the complaint alleged and the answer denied that the refinancing was pursuant to the agreement with Malley. The answer did not allege the agreements had been abandoned, or a new agreement made. It alleged only nonperformance. The court found appellants' denial that the refinancing was pursuant to the agreements to be untrue. This finding must be construed as a finding that notwithstanding the deviations from the original plan, and the changed conditions, the parties understood they were acting under the original agreement. The purposes of that agreement were to replace the three trust deeds with a single first trust deed, and to apply on the $146,500 trust deed any surplus that might remain. These purposes were accomplished by the refinancing. In the absence of the evidence it must be deemed to be a fact that the parties did not altogether abandon the original agreements or substitute a new one. It is a necessary conclusion from the findings that appellants did not object to the terms of the refinancing, did not complain that plaintiff and Malley were not meeting the terms of the agreement and did not notify the latter that they, appellants, would not consider themselves bound thereby. The findings establish that the agreement remained in effect throughout the refinancing agreements. The case, then, is one of imperfect per-

formance, accepted without waiver of a claim for damages, where the principal purposes of the agreement had been accomplished and nothing remained to be done by plaintiff by way of performance.

There is no hard and fast rule in cases of imperfect performance by which liability of the promisee to render compensation, and the amount of an allowable recovery can be judged. The unique facts of the present case call for the application of general principles. Some of these are stated in American Jurisprudence as follows: ''Where a party has in good faith fulfilled the contract, but not in the manner or within the time agreed, and the other party has sanctioned or accepted the performance, the former may recover upon an implied contract. If such performance is accepted and used by the other party, he is answerable to the amount whereby he is benefited on an implied promise to pay for the value he has received.'' (12 Am.Jur. p. 917.)

''The performance of conditions or of promises is dispensed with when the performance thereof is waived by acceptance of performance differing from the performance required by the contract. . . . Although conditions precedent must be performed and a partial performance is not sufficient, yet, where a contract has been performed in a substantial part and the other party has voluntarily accepted and received the benefit of the part performance, knowing that the contract was not being fully performed, the latter may thereby be precluded from relying upon the performance of the residue as a condition precedent to his liability to pay for what he has received and may be compelled to rely upon his claim for damages in respect of the defective performance. The foundation of this rule undoubtedly is that it would be unfair that a party should receive and keep a part of what he has bargained for and pay nothing for it, because he has not received the whole. The technical reason given is that a covenantee or promisee must be held to have dispensed with the performance of a condition precedent, as such, if, with knowledge that the condition was not being fully performed, he treats the contract as continuing and takes the benefit of a part performance. It seems that the performance must be of a substantial part of the contract and that the acceptance must be under such circumstances as to show that the party accepting knew or ought to have known that the contract was not being fully performed. But the difficulty of determining the measure of damages for failure fully to comply with the terms

of a particular contract will not prevent the acceptance of a substantial part performance from changing a warranty which constitutes a condition precedent into a covenant which is not a condition." (12 Am.Jur. p. 921.)

Mr. Williston says (Rev. ed., Williston on Contracts, § 805) that in many jurisdictions a plaintiff who has not complied with an express condition but has rendered substantial performance may recover the contract price, less whatever damages the defendant may have sustained by reason of nonperformance, although in other states plaintiff's only redress is on *quantum meruit.* In section 1473 he says: "Few questions in the law have given rise to more discussion and difference of opinion than that concerning the right of one who has materially broken his contract without legal excuse to recover for such benefit as he may have conferred on the other party by part performance of an indivisible contract or by the performance of an indivisible fraction of a divisible portion of a contract. A satisfactory solution is not easy, for two fundamental legal policies seem here to come in conflict. On the one hand, it seems a violation of the terms of a contract to allow a plaintiff in default to recover—to allow a party to stop when he pleases and sell his part performance at a value fixed by the jury to the defendant who has agreed only to pay for full performance. On the other hand, to deny recovery often gives the defendant more than fair compensation for the injury he has sustained and imposes a forfeiture on the plaintiff. The mores of the time and places will often determine which policy will be followed. But the second of these opposing policies has steadily increased in favor in recent years. Except where the obliquity of the defective performance is of a sort that indicates moral obliquity, and where, therefore, the courts feel that the one who is in default may properly be penalized, the tendency is to grant him restitution if a substantial net benefit has accrued to the defendant by partial performance."

The subject is treated in the Restatement as follows: "(1) Where the defendant fails or refuses to perform his contract and is justified therein by the plaintiff's own breach of duty or nonperformance of a condition, but the plaintiff has rendered a part performance under the contract that is a net benefit to the defendant, the plaintiff can get judgment, except as stated in Subsection (2), for the amount of such benefit in excess of the harm that he has caused to the defendant by

his own breach, in no case exceeding a ratable proportion of the agreed compensation, if (a) the plaintiff's breach or non-performance is not wilful and deliberate; or (b) the defendant, with knowledge that the plaintiff's breach of duty or non-performance of condition has occurred or will thereafter occur, assents to the rendition of the part performance, or accepts the benefit of it, or retains property received although its return in species is still not unreasonably difficult or injurious.

"(2) The plaintiff has no right to compensation for his part performance if it is merely a payment of earnest money, or if the contract provides that it may be retained and it is not so greatly in excess of the defendant's harm that the provision is rejected as imposing a penalty.

"(3) The measure of the defendant's benefit from the plaintiff's part performance is the amount by which he has been enriched as a result of such performance unless the facts are those stated in Subsection (1 b), in which case it is the price fixed by the contract for such part performance, or, if no price is so fixed, a ratable proportion of the total contract price." (Rest., Contracts, ch. 12, § 357, pp. 623-624.)

"d. Even if the plaintiff's non-performance is a breach of his contractual duty for which the defendant has a right to damages, there are many cases in which it is not just to permit the defendant to retain the whole benefit of the plaintiff's part performance without paying anything in return. If the benefit received by the defendant is no more than his harm, he owes nothing to the plaintiff. But if the benefit received is more than the amount of his harm, to let him retain the excess would not only be giving him something for nothing, it would also be making the plaintiff suffer a penalty for his wrong in excess of the compensatory damages that are held to be a fully adequate remedy in actions for wrongful breach. . . . f. Even though the plaintiff's breach is wilful and without semblance of excuse, the defendant must restore the excess of benefit over harm if, with knowledge that the breach has occurred or is impending, he assents to the part performance, or retains it or accepts the benefit of it unreasonably." (Rest., Contracts, § 257, p. 626.)

In line with the above there are certain well established principles to be considered.

■ Ordinarily, a plaintiff cannot recover on a contract without alleging and proving performance or prevention or waiver of performance of conditions precedent and willingness and ability to perform conditions concurrent. (Civ. Code, § 1439; 6 Cal.Jur., § 239, p. 399.)

■ Where imperfect performance has been rendered in good faith, and has been accepted so as to give the defendant the benefit of it, a recovery may he had in *quantum meruit*. There is a liability in quasi contract for the reasonable value of the benefit conferred. (*Leoni* v. *Delany*, 83 Cal.App.2d 303, 307 [188 P.2d 765, 189 P.2d 517]; *Castagnino* v. *Balletta*, 82 Cal. 250, 258 [23 P. 127]; *De Boom* v. *Priestly*, 1 Cal. 206; 5 Cal.Jur.2d (Assumpsit), § 11, p. 540.) Although the complaint pleaded waiver of full performance, it also pleaded all the facts and was sufficient to support a recovery on the contract, if the waiver was proved, or in *quantum meruit*, if it was not proved.

■ Where there is imperfect performance, rendered in good faith and accepted voluntarily, the court may adopt as a proper measure of liability the contract price less damages, or the value to the defendant of the imperfect performance that has been rendered. Adoption of the contract price, less damages, in case of performance falling short of substantially full performance, is not necessarily enforcement of the contract. It may be only the best available method of arriving at a fair and just result.

■ We shall see that upon the established facts the proper measure of liability was the one the court used, namely, the contract price, less damages, if any, of appellants. The court expressly omitted any finding as to the value of the refinancing to appellants, stating as the reason that they were liable for the agreed price. Whatever may have been the reasoning of the court a correct conclusion was reached.

It is a necessary conclusion from the facts found that there was no difference in amount between the contract price, less damages, and the value of the financing to appellants. Appellants had fixed the value of the refinancing in their agreement with Malley and they reaffirmed it in their agreement with Rosenblot. In each case their obligation to pay a certain amount was an inseparable part of the consideration they agreed to render. It was an inducement to Malley to sell to them, and an inducement to Rosenblot to buy the property. In each case they had received full value for their promise to pay for a new loan of not over $75,000. Had such a loan been offered them they could not have refused to pay the expense of it upon a claim that it would be worth less to them than they had agreed to pay. They would have been bound by their contract. It is true they had not agreed to pay for financing in an amount exceeding $75,000, but they accepted the larger

loan as a substitute for the smaller one when they could have rejected it altogether. Having accepted it, pursuant to their agreement, it was acceptance of imperfect performance on the part of plaintiff. Appellants became obligated to pay what it was worth to them. The finding that they suffered no damage was, in effect, a finding that the $125,000 loan was worth to them what a $75,000 loan would have been worth. Since the value of the benefit they would have derived from the smaller loan had been irrevocably agreed upon, it would necessarily follow from the finding of no damage that the larger loan was worth to them what they had agreed to pay. The admitted facts lend support to that conclusion. Appellants voluntarily accepted the loan; the transaction was completed, nothing remained to be done by plaintiff in the way of performance except to make application of the money as agreed. The three trust deeds were paid off and the balance applied on appellants' trust deed note to Malley, less a small amount, nonapplication of which was found to have caused appellants no damage. In view of the findings, and in the absence of the evidence, it must be presumed that appellants sought to prove that the larger loan was worth less to them than they had agreed to pay for a smaller one and that they had suffered some detriment. Had they succeeded in establishing that claim plaintiff would have had to suffer a diminution of its recovery, perhaps to the extent of the entire expense, as a consequence of its imperfect performance. But when financing was procured which was of value to appellants equal to that of the loan they had previously agreed upon, there could be no difference in the amount of their liability between the agreed price, where there was no damage to them, and the value to them of the imperfect performance. Had the court made a finding as to the value of the benefit received by appellants it would necessarily have been in the amount of the judgment against them.

The recovery was properly limited to the amount appellants had agreed to pay. In the absence of a new agreement, imposing a greater liability than the one appellants had assumed, the additional expense of the larger financing would justly fall upon plaintiff.

The second cause of action of the complaint sought damages from defendant Malley. The court found that Malley, in order to induce plaintiff to accept the refinancing, represented to Rosenblot, president of plaintiff, that he had conferred with Radis and Goldman respecting the refinancing, and that they

would pay the entire expense of securing a first loan of $125,-000; that plaintiff relied upon said representation and would not otherwise have incurred the expense of refinancing; that the representations were false, known by Malley to be false, and were fraudulently made; and that the total cost of financing and the damage to plaintiff was $5,844.

It is contended by appellants that there is an irreconcilable conflict in the findings. There was a finding to the effect that plaintiff incurred the refinancing expense in reliance upon the representations of Malley. It is argued that if plaintiff relied upon those representations it did not rely upon appellants' agreements with Malley and Rosenblot. The point appears to be that if Malley was liable for the total expense, appellants could not be liable for any part of it, although they had agreed to pay it. We discover no conflict or inconsistency in the findings. If Malley is liable for part or all the expense and appellants for only a part of it, neither one should escape liability. We have heretofore set out the terms of the conditional judgment. It provides that if plaintiff collects by credit or otherwise the amount due from appellants, that amount is to be credited upon the judgment against Malley; otherwise, Malley will receive no credit. Appellants say: "The alternative judgment, as the trial court has rendered it, is in itself proof that the court could not make up its mind." This is an unwarranted and pointless criticism. It is of no concern to appellants that Malley's liability will be reduced by the amount of the judgment against them.

We have mentioned that the court found that appellants were not estopped. We do not see that this finding has any bearing on the merits of the action. The estoppel pleaded by plaintiff was related to the allegation that appellants had waived full performance by plaintiff, had agreed to the new loan, benefited by it, subordinated their own lien, and that plaintiff relied upon all these facts in taking the new loan. It was found that full performance had not been waived. All the other allegations as to estoppel were found to be true, but the conclusions that appellants were not estopped to claim failure to render full performance is not inconsistent with the judgment. The findings and the conclusion were to the effect that appellants had not waived the only right which remained, namely, the right to assert a claim of damages. They were accorded that right.

The fact that the trial court may have decided the case on the theory that the conditions of the agreement for refinanc-

ing were merely covenants furnishes no reason for disturbing the judgment as to Radis and Goldman. These appellants were not entitled to a judgment in their favor upon the facts found. If the judgment is a proper one upon those facts it may not be reversed merely because the trial court applied a theory which is believed on appeal to have been in error. (4 Cal.Jur.2d 391, § 536.)

On the appeal of Malley the first claim made is that the conditional judgment is "inconsistent, uncertain, incomplete, contradictory and inequitable." We have previously expressed general approval of the form of the judgment. It is also asserted that the finding that plaintiff was damaged in the sum of $5,844 has no support in the other facts found. It has support in the findings as to Malley's fraud, plaintiff's reliance thereon, and the incurring of indebtedness that plaintiff would not otherwise have incurred. In the absence of the evidence the finding of damage is conclusive.

 Malley's further criticism of the judgment has merit. He is held liable in the amount of $5,844, subject to a conditional credit, because he falsely represented that Radis and Goldman would pay all the expense of the refinancing. A judgment against him for the entire amount would have been proper if there had been no obligations on the part of Radis and Goldman and no judgment against them. But since they have been held liable to the extent of $3,824, the only detriment suffered by plaintiff by reason of Malley's fraud is the amount of the difference between $3,824 and $5,844, or $2,060. Malley did not guarantee payment of what was owed by Radis and Goldman. He only represented they had promised to pay more than their agreements bound them to pay.

The judgment is modified to award plaintiff $2,060 and interest against Victor Malley, and in other respects, and as modified, is affirmed; respondent to recover costs as against Radis and Goldman, and Malley to recover his costs on appeal from respondent.

Wood (Parker), J., and Vallée, J., concurred.