## No. 17,438.

James E. Leoffler, et al. v.
Elma Irene Wilcox, Admx.

(289 P. [2d] 902)

Decided October 31, 1955.   Rehearing denied December 5, 1955.

Messrs. Grutter & Callahan, for plaintiffs in error.

Messrs. THOMAS & THOMAS, for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the Court.

ON December 4, 1950, Kenneth G. Wilcox, now deceased, entered into a well and pump contract by which he agreed to drill an irrigation well to the depth of 265 feet for the sum of $6,500 as full price for the drilling of the well, the well casing and the gravel and pumping equipment complete, and guaranteed that the well would produce 1,000 gallons per minute and if not, he would retain the casing and gravel. This contract was entered into with James Leoffler, owner of the land on which the well was to be drilled. The well was to be started, in the words of the contract, "now."

Wilcox is deceased and this action was instituted by his wife as administratrix of his estate to recover on the contract or on quantum meruit. Defendants' answer to her complaint contains allegations to the effect that they advanced $3,000 to deceased under the terms of the contract and after completion of the well, the deceased refunded $2,650 to them, retaining $350.00 for payment of the drilling of the test well provided for in the contract and in full payment for the casing and gravel which deceased was authorized to remove under the terms of the agreement. They further alleged that the settlement and compromise was agreed upon between the parties about March 3, 1951, and the refund was made about June 4, 1952, in full settlement and fulfillment of the agreement between the parties, and that the deceased thereby fully compromised and settled all claims in his favor arising out of the contract.

The case was tried to a jury and defendants' motions for instructed verdict at the close of plaintiff's case and at the close of all the evidence as well as their motion for judgment notwithstanding the verdict were denied

by the trial court. December 11, 1953, on instructions not objected to, the jury returned a verdict in favor of plaintiff in the sum of $1,668.84 upon which judgment was entered; and this writ of error is prosecuted to review that judgment.

There is no consequential conflict in the evidence. The record discloses that deceased, after considerable delay, drilled the well, furnishing gravel which was to be packed around the casing, and furnished all the casing. The well did not produce 1000 gallons per minute as guaranteed, but did produce better than 200 gallons per minute. The landowners did not accept or reject the well, but attempted to get a refund of the $3,000 advanced on the contract. Deceased had by this time left for employment in Peru, where he died. The well was drilled in the winter of 1950-1951, and at its completion defendant Leoffler told deceased that he did not want the well, that it was no good except as a stock well, and that he did not need such a well because he already had a stock well. These statements made by Leoffler were made on several occasions during the subsequent negotiations concerning the refund and were made to deceased and his wife, now his administratrix, as well as to the sheriff of Kit Carson county and the district attorney and the attorney who represented the Wilcox interests at the time of the final settlement.

After the completion of the well, and when defendant knew that it would not produce according to the guarantee, he began preparing the well for use as an irrigation supply well by constructing a reservoir into which to pump the output of the well until he had sufficient body to release onto his lands from the reservoir for irrigation. These preparations were not made known to deceased or to his wife during the negotiations leading up to and at the time of the refund demanded by defendant and finally paid by deceased's wife. He kept saying that he did not want the well, that it was no good and that his stock well made as much water as the irri-

gation well did. Upon these statements he obtained a check from deceased dated April 15, 1951, for $2,650 marked "Refund on well." This check was returned as short and on December 8, 1951, defendant took a note for the amount, due June 1, 1952, with interest at 10 per cent from date, but did not return the short check to deceased or his wife. After accepting the note, defendant still attempted to force payment by threatening prosecution on the check. About June 4, 1952, defendants received full payment of the amount represented by the check. As before stated, at the time of these transactions defendant Leoffler knew that he intended to develop the well and was making plans therefor, including application to the government for payments under the U. S. Agricultural Program. He carried out these intentions and in the summer of 1952 completed the well, installed pumping equipment and was able to irrigate in the neighborhood of 100 acres.

It was and is now the contention of plaintiff that defendants, in first refusing to accept the well and then electing to accept and develop it for irrigation thereby taking over the result of services rendered by deceased as well as the materials furnished, are liable for the payment of the reasonable value of services rendered and the materials furnished notwithstanding the failure of deceased to furnish the well supplying the quantity of water required or guaranteed in the contract.

Failure of defendants to reveal their intentions to accept the well after they believed the driller or his interests were out of the way and obtaining a refund on the well would not preclude plaintiff because the settlement as made with her and deceased, was predicated upon a mistake of fact if the testimony is considered in its most favorable light in behalf of defendants, or as a result of the fraudulent representations taken at its worst from defendants' standpoint. The most important feature of the entire matter so far as liability is concerned is the fact that defendants changed their minds

about accepting the well. This change of mind was conveniently kept from plaintiff until the refund was negotiated. Having apparently made their disguised election to reject the well, their position was accepted at face value by plaintiff and on that basis a settlement of the rights of the parties was made on June 4, 1952. After receiving the refund from this settlement, defendants developed the well for the purposes originally intended, and in the use thereof accepted and received the benefits of the services and materials furnished by deceased without his knowledge. We believe the law to be well settled that where one party in good faith has fulfilled a contract but not in the exact manner agreed upon, and the other party has accepted the benefits of the part performed, then he is answerable to the amount whereby he was benefited, on an implied promise to pay for the value he has received. 12 Am. Jur. §352, p. 916; 17 C.J.S. §511, p. 1093.

The status of this matter may be summarized as follows: First, there is an express contract not fully performed; second, defendants had the option to rescind or refuse to accept and to reject the well, which they exercised; third, thereafter and at a time favorable to them, they did accept the well and finished it for the intended uses and by reason thereof received and will continue to receive substantial benefits from the services and materials furnished by deceased.

Defendants, after accepting the well at a time convenient to them and appropriating it to their use, will not be upheld in their contention that plaintiff is not entitled to recover because of deceased's failure to complete the well. Our present determination on this question is fortified by the case of *Louthan v. Carson,* 63 Colo. 473, 168 Pac. 656, wherein this Court said, "* * * and, perhaps, it may be asserted, that where a thing is so far perfected as to answer the intended purpose by the party for whom it is constructed, no mere imperfection or omission, which does not virtually affect its usefulness, can be in-

terposed to prevent a recovery, subject to a deduction for damages, consequent upon the imperfection complained of."

█ It is to be noted that defendants' case and the defense thereof were supported in the main by defendants' own testimony and that defendant Leoffler was testifying against the sealed lips of deceased. Our study of the testimony leads us to believe that some of this testimony ought to have been stricken from the record when objected to under the "Dead Man's Statute." Defendant's contention that plaintiff is precluded by the purported settlement cannot be sustained for the reason that any settlement or agreement finally made by plaintiff was not made with full knowledge of the facts and was entirely predicated on the representations of defendant. We have before us a clear cut case where defendant rearranged the truth to suit his convenience and thereby took advantage of plaintiff in obtaining the refund. We are satisfied that the evidence is sufficient to sustain the verdict of the jury; it being unusually free of conflict. In analyzing the testimony as to the values shown for the gravel and the equipment retained and used by defendants, the verdict, from a monetary standpoint, requires defendants to pay less than the values shown for the actual cost of the casing and gravel in the well, much less anything at all for the services in drilling the well. Where it appears that defendants are attempting to get a costless bargain and thereby unjustly enrich themselves at the expense of a dead man's family, the verdict is favorable to them when considered in the light of what they received and the continuing benefits thereof.

For the reasons herein indicated, the judgment on the verdict should be and is hereby affirmed.

MR. JUSTICE CLARK and MR. JUSTICE KNAUSS dissent.

MR. CHIEF JUSTICE ALTER and MR. JUSTICE LINDSLEY not participating.