**AMERICAN SURETY COMPANY OF NEW YORK, a corporation, and J. L. McBride dba Mac Exploration Company, Defendants/Appellants,**

v.

**UNITED STATES of America FOR the Use and Benefit of B & B DRILLING COMPANY, a corporation, Plaintiff/Appellee.**

No. 20710.

United States Court of Appeals
Ninth Circuit.

Nov. 3, 1966.

Morton Galane, Las Vegas, Nev., for appellants.

Singleton, DeLanoy & Jemison, Rex Jemison, Las Vegas, Nev., for appellee.

Before POPE, MERRILL and KOELSCH, Circuit Judges.

POPE, Circuit Judge.

This was an action brought under the Miller Act, 40 U.S.C. §§ 270a and 270b, to recover sums owing to the use plaintiff B & B Drilling Company, for equipment, labor and supplies furnished to the defendant McBride.

On March 15, 1960, United States, acting through the Atomic Energy Commission, entered into a written contract with McBride whereby the latter agreed to furnish all necessary materials, equipment and labor to drill seven well holes at the atomic test site at Camp Mercury, Nevada. On May 9, thereafter, McBride subcontracted a portion of the work under a written contract to the use plaintiff. The contract provided that the use plaintiff would drill holes to an estimated 6150 linear feet in depth and would furnish all equipment, labor and supplies necessary in connection therewith and in accordance with specifications and accepted drilling practices. It was provided that the work should be covered by a performance bond but the amount thereof was not specified. Payments for the work were to be made on or about the 15th day following the end of the month in which the work was performed, at stated amounts per lineal feet.

The use plaintiff entered the test site on May 18, 1960, and after several days spent in obtaining security clearance and setting up drilling equipment it began drilling on May 24 with McBride's approval although a performance bond had not been posted. On June 23, approximately one month after work commenced, an addendum was made to the original subcontract to the effect that the use plaintiff would obtain a performance and payment bond in the amount of $25,000. On July 28, thereafter, use plaintiff learned that it could not secure such a bond and communicated the information to McBride. The reason for this inability was that surety companies will not issue such bonds on work that is already in progress. Use plaintiff continued to drill until August 10, 1960, on which date it had not received payments for drilling previously done. On August 15, use plaintiff again demanded payment of the amount then due on the contract. This payment was refused because of the failure of use plaintiff to post the payment bond. McBride ordered the use plaintiff off the test site.

Upon trial to the court sitting without a jury, the court found that the failure of use plaintiff to obtain the bond was not a material breach of the contract but only a partial breach of such character that McBride was not validly excused from performing; that such failure did not give McBride the right to rescind the contract; that McBride was not justified in refusing to make the payments due for the work performed; that McBride had suffered no loss in consequence of the failure to furnish the bond; that he had not been required to pay for any of the use plaintiff's materials or labor and suffered no damages in consequence thereof. It found that the use plaintiff had substantially complied with the requirements of the contract. The court found that the amount due from the defendant to the use plaintiff under the written contract for two holes drilled was $22,149. After allowing two items of set-off against this sum [1] it entered judgment for use plain-

---

[1] A hole drilled by use plaintiff had not been in proper alignment and had to be reconditioned so as to meet the requirements of the contract. This recondition-

tiff for the balance of $16,065 plus interest.

The defendants then took this appeal. Their first and principal contention is that the failure of the use plaintiff to obtain the bond was a material and substantial breach of contract on its part which operated to excuse McBride from any performance on his part and to render him not liable for the payment of the sums here awarded.

If we assume, as has been held, that the materiality of a breach of contract is primarily a factual question, Associated Lathing and Plastering Co. v. Louis C. Dunn, Inc., 135 Cal.App.2d 40, 286 P.2d 825, 830, and if the court's finding that the failure of the use plaintiff to obtain the bond was not a material breach, going to the essence of the contract, but was only a partial breach of contract, then authorities may be cited which hold that a slight breach will not necessarily end further duties of the injured person for the performance of the contract.[2]

Although the trial court's decision supporting a suit upon the contract was based upon the court's finding of substantial performance on the part of the use plaintiff, it is plain that recovery upon the contract might also have been allowed on the ground that since the performance of the condition relating to a payment bond was impossible from the beginning the non-performance of that condition could not be a defense for McBride.[3]

We think, however, that this case may be disposed of upon grounds which do not require us to inquire into the materiality or substantiality of the use plaintiff's failure to furnish the bond—grounds which disclose that in any event the use plaintiff was entitled to recover the judgment which was here awarded to him. We now refer to the rule set forth in Restatement of the Law of Contracts, § 357, which in material part reads as follows: "§ 357. Restitution in Favor of a Plaintiff Who Is Himself In Default. (1) Where the defendant fails or refuses to perform his contract and is justified therein by the plaintiff's own breach of duty or non-performance of a condition, but the plaintiff has rendered a part performance under the contract that is a net benefit to the defendant, the plaintiff can get judgment, except as stated in Subsection (2), for the amount of such benefit in excess of the harm that he has caused to the defendant by his own breach, in no case exceeding a ratable proportion of the agreed compensation, if

(a) the plaintiff's breach or non-performance is not wilful and deliberate; or

(b) the defendant, with knowledge that the plaintiff's breach of duty or non-performance of condition has occurred or will thereafter occur, assents to the rendition of the part performance, or accepts the benefit of it, or retains property received although its return in specie is still not unreasonably difficult or injurious.

(2) (Not material here) * * *

(3) The measure of the defendant's benefit from the plaintiff's part perform-

ing was accomplished by the defendant at a cost of $2088. One item of set off was this $2088. Another was the sum of $3996 for additional wages which McBride was required to pay because of the provisions in the contract with which use plaintiff had not complied.

2. See Williston on Contracts, Rev.Ed., Vol. V, § 1290, p. 3675: "Though breach to any extent of any promise in a contract gives rise to a cause of action, it has already appeared that a slight breach will not necessarily end further duties of the injured person for the performance of the contract. In spite of a slight breach a promisor may be able so nearly to fulfill the terms of his promise that the just way to deal with the situation is to hold the promisor liable merely for the defect in the performance and not to regard the contract as terminated and as being transformed into a right of action entitling the injured party to recover damages equal in value to the whole performance of the contract." See also Restatement Law of Contracts, § 313; and 17A C.J.S. Contracts § 509, p. 816.

3. See 17A C.J.S. Contracts §§ 461 and 463(1)c, pp. 605 and 613.

ance is the amount by which he has been enriched as a result of such performance unless the facts are those stated in Subsection (1b), in which case it is the price fixed by the contract for such part performance, or, if no price is so fixed, a ratable proportion of the total contract price."

■ Appellant asserts and we assume that the law here applicable would be the law of Nevada. See Continental Casualty Company v. Schaefer, 9 cir., 173 F.2d 5, 7 to 8. While we find no Nevada cases dealing with problems of this kind, the rule stated in the last quotation from § 357 of the Restatement has been so universally approved that we take it for granted that the Supreme Court of Nevada would follow it.[4] Particularly significant here is the fact that McBride knew of the use plaintiff's inability to procure the payment bond and yet he permitted the work to proceed. It is obvious that the use plaintiff's failure to supply the bond was not wilful or deliberate. Because McBride assented to the performance of the work by the use plaintiff notwithstanding his knowledge that the bond had not been supplied, he would be liable here even if the use plaintiff's breach

had been wilful and without semblance of excuse.[5]

It is plain that if use plaintiff is permitted to recover under the rules set forth in Restatement § 357, supra, his recovery would be essentially one based on unjust enrichment of the defendant. If it be assumed that use plaintiff in failing to furnish the payment bond was guilty of a substantial default in the performance of the contract, then the recovery by the plaintiff would be upon the theory that he has rendered a part performance of value; or, as stated by Corbin on Contracts, § 1124, Vol. 5A, upon the theory "that he has done more good than harm to the defendant, and that the defendant will be unjustly enriched and the plaintiff unjustly penalized if the defendant is allowed to retain the beneficial part performance without paying anything in return."[6]

■ Since the trial court based its judgment upon the contract itself and not upon any theory of quasi-contractual liability, it of course based its award of damages upon the prices and rates of payment stated in the contract itself. The question arises whether, if we affirm the judgment for use plaintiff upon grounds stated in § 357 of the Restate-

---

4. See cases cited 5 Williston on Contracts § 1475, notes 2, 5, (Rev. Ed.); and 17A C.J.S. Contracts § 511; Roseleaf Corp. v. Radis, 122 Cal.App.2d 196, 264 P.2d 964, 969, 971; Jones & Laughlin Steel Co. v. Abner Doble Co., 162 Cal. 497, 123 P. 290, 294; Burke v. McKee, Okl., 304 P.2d 307, 310; Leoffler v. Wilcox, 132 Colo. 449, 289 P.2d 902, 904; Mallory v. City of Olympia, 83 Wash. 499, 145 P. 627, 630; Miles Homes, Inc. of Wisconsin v. Starrett, 23 Wis.2d 356, 127 N.W.2d 243, 246; Amtorg Trading Corp. v. Miehle Printing Press & Mfg. Co., 2d cir., 206 F.2d 103; Michigan Yacht & Power Co. v. Busch, 6 cir., 143 F. 929, 934.

5. See Comment "f" to Restatement § 357, supra, as follows: "Even though the plaintiff's breach is wilful and without semblance of excuse, the defendant must restore the excess of benefit over harm if, with knowledge that the breach has occurred or is impending, he assents to the part performance, or retains it or

accepts the benefit of it unreasonably. If the part performance is received without such knowledge and is of such a character that it cannot be returned in specie without unreasonable difficulty or sacrifice, it may be retained without making restitution, even though it exceeds the injury. Such is sometimes the case when the part performance has been incorporated with the defendant's land or goods. Doubts in cases of this kind are resolved in favor of the plaintiff, in order to avoid a forfeiture in excess of harm suffered."

6. Dermott v. Jones, 64 U.S. 220, 233, 16 L.Ed. 442; "Still, if the other party has derived any benefit from the labor done, it would be unjust to allow him to retain that without paying anything. The law, therefore, implies a promise on his part to pay such a remuneration as the benefit conferred is really worth; and to recover it, an action of indebitatus assumpsit is maintainable."

ment, supra, the measure of defendant's benefit is the price fixed by the contract for the part performance.

One answer to this question is to be found in the section of the Restatement quoted above. There it is stated, where, as here, defendant assents to, or receives the benefit of part performance, the measure of defendant's benefit is "the price fixed by the contract for such part performance." In short, since defendant with knowledge of the failure to furnish the payment bond, assented to the continuance of the drilling by the use plaintiff, it is fair to conclude that in doing so defendant contemplated payment according to the contract prices. The authorities generally agree that under these circumstances, where there has been a voluntary acceptance of an imperfect performance the court may adopt as a proper measure of liability the contract price less the damages sustained by the defendant in consequence of lack of perfect performance. Roseleaf Corp. v. Radis, supra, footnote 4.[7]

It seems plain therefore that it was proper, under any theory, to award the use plaintiff the damages fixed by the trial court.[8]

■ Appellants assert that the court improperly allowed recovery of interest for a period prior to the entry of the judgment. Under the terms of the contract plaintiff should have received a payment on August 15, 1960, and it was this payment which McBride refused. As against McBride the court awarded interest at the legal rate from August 15, 1960. As against American Surety Company interest was awarded from the date of service of summons upon it. Liability for interest in a suit under the Miller Act is covered by the law of the state where the contract and bond were per-

formed. Illinois Surety Company v. John Davis Co., 244 U.S. 376, 37 S.Ct. 614, 61 L.Ed. 1206. In Nevada the award of interest is governed by Nevada Revised Statutes § 99.040 which provides in part as follows: "When there is no express contract in writing fixing a different rate of interest, interest shall be allowed at the rate of 7 percent per annum upon all money from the time it becomes due, in the following cases: 1. Upon contracts, express or implied, other than book accounts. * * * 4. Upon money received to the use and benefit of another and detained without his consent."

In Sierra Pacific Power Co. v. Nye, 80 Nev. 88, 389 P.2d 387, 391, the Supreme Court of Nevada held that a purchaser of electric power who recovered over-payments for electric power from the power company was entitled to interest on the amount overpaid between the time the overpayments were made and the time the judgment was rendered. The court based its decision upon the language quoted above from the Nevada statute. It will be noted that that action was also one in which recovery was based upon a contract implied from the unjust enrichment of the defendant. The court held that that recovery was proper because the amount owing was "definitely ascertainable by mere mathematical calculation." We have a like situation here.

■ Of course the set-offs which were allowed to McBride were for amounts which were unliquidated. That, however, does not alter or diminish the plaintiff's right to recover the interest which was here allowed. It is a general rule that where the amount of a claim is certain, as here, but is reduced by reason of an unliquidated set-off or counterclaim thereto, interest is properly allowed on the amount

---

7. See cases cited in 5A Corbin on Contracts § 1124, footnote 17, and in Williston on Contracts, Rev. Ed., § 1480, footnote 8; Katz v. Bedford, 77 Cal. 319, 19 P. 523, 1 L.R.A. 826; Lowe v. Rosenlof, 12 Utah 2d 190, 364 P.2d 418, 421; and Valentine v. Patrick Warren

Const. Co., 263 Wis. 143, 56 N.W.2d 860.

8. There can be no doubt that McBride actually received benefits equal to the $9 per linear foot fixed by the contract. McBride was receiving $12.50 a foot for the same work from the Government.

found to be due from the time it became due and was demanded.[9]

We hold that interest was properly awarded and added to the amount of the judgment.

The judgment is affirmed.

---

9. See annotations on "Reduction of claim under contract as affecting right to interest," 3 A.L.R. 809, 89 A.L.R. 678. Hansen v. Covell, 218 Cal. 622, 24 P.2d 772, 775, 89 A.L.R. 670. Upon the general right to recover interest upon an amount owing which is ascertainable by computation, see Mall Tool Co. v. Far West Equipment Co., 45 Wash.2d 158, 273 P. 2d 652.