DEVINE, J. pro tem.
 
 *
 

 Defendant, who is also cross-complainant, appeals from a judgment which was rendered
 
 *334
 
 against him in amount of $11,553.20. The controversy arose from a contract relating to the manufacture of lumber.
 

 J. B. Tsarnas and Henry Tsarnas, individually and doing business as J. B. Tsarnas and Son, operated a sawmill in Humboldt County. Walter C. Bailey, individually and doing business as West Coast Forest Products Company, operated a lumber business in San Mateo. On May 6, 1955, a contract was signed by the terms of which Bailey was to supply logs to Tsarnas and Son, who were to saw them into merchantable lumber and ship it as directed by Bailey.
 

 Disputes between the parties over claimed breaches by each party ensued. On August 1, 1955, Tsarnas and Son gave notice of rescission of the contract because of one asserted breach, namely, failure of Bailey to supply an adequate number of logs in accordance with Bailey’s obligations as they were viewed by Tsarnas and Son.
 

 This action was commenced by Tsarnas and Son to recover a balance alleged to be due for shipments of lumber for Bailey after August 1, 1955, for a balance for lumber stored at South Fork in Humboldt County for Bailey’s account, and for a small amount for peeling of logs. A bill of particulars was filed which lists eight unpaid invoices from September 14, 1955, to September 30, 1955. However, the complaint itself is on common count for services rendered at the specific instance and request of the defendant prior to July 1, 1955.
 

 The trial court admitted the special contract in writing as evidence in plaintiffs’ case, over objection by defendant that a special contract should not be admitted on a pleading of a common count. A huge volume of evidence was produced on each side relating to claimed breaches of contract by the other. The court found that plaintiffs had not breached the contract, and that defendant owed the sum of $11,553.20. It is conceded by plaintiffs that the amount is slightly in excess of the amount which plaintiffs claim to be supported by the evidence, and plaintiffs admit that the judgment should be reduced to the sum of $11,266.49.
 

 Appellant makes several points, some of which relate to the procedural aspects of the trial, others to the substance of the controversy. They are taken up after a statement of the essential facts. There having been conflicts in evidence spread over more than 700 pages of testimony, and on several score of subjects, major and minor, it is well to give a succinct account of the evidence as it favors the respondents’ cause.
 

 
 *335
 
 The written contract of May 6, 1955, contains these references to the supply of logs to the mill: (1) Bailey agrees to deliver logs “at rates of sawing within the reasonable sawing capacity of said sawmill and as requested by first party [Bailey],” (2) Tsarnas and Son agree to “saw no logs except for first party at any time when first party shall have logs available at said mill site for sawing and shall have requested that the same be manufactured into lumber.”
 

 Thus, the written contract does not specify any number of board feet of logs, nor any percentage of the capacity of the mill which must be supplied by Bailey. However, a considerable amount of evidence relating to the log supply was admitted on both sides, all of it without objection. When Henry B. M. Tsarnas first met Bailey, Tsarnas had been considering the moving of his mill. Bailey told him he would bring in about ten million feet a year, about a hundred million feet altogether. Hale, production manager for Bailey, told Tsarnas that Bailey had a contract with a logger named Wirta to take Wirta’s entire supply of ten or twelve million feet a year and that he had a ten-year supply. Bailey and Hale told Tsarnas they would supply all the logs Tsarnas needed for the future and would supply him with six or seven million feet of logs for the winter supply, called the “cold deck.” Thereafter, the contract was signed. It was for one year, but would be renewed automatically from year to year unless terminated “for cause” by ninety days’ notice by one party to the other.
 

 Logs were supplied to the mill, commencing in May, by Wirta for Bailey’s account, but Wirta demanded more money of Bailey, and the supply was stopped by Bailey. Thereafter, Bailey tried earnestly to contract with loggers, but with little success. The last supplier brought logs of such poor quality that 40 per cent went into the burner as refuse. A meeting was arranged between Tsarnas and Bailey at the office of Tsarnas’ lawyer in Eureka, Judge Falk, at which the subject of supply was discussed.
 

 It was necessary, for the operation of the mill in the winter, to have a deck of six or seven million feet. Moreover, it was testified, if it becomes apparent to employees that an adequate deck is not being built up for the winter, they will leave for mills that have a more promising prospect. The average supply of logs Bailey had at the Tsarnas mill in the period from May to August 1955 was estimated variously at two or three hundred thousand feet to four or five hundred thou
 
 *336
 
 sand, and the deck diminished as the summer went on, when it should have increased.
 

 On August 1, 1955, Tsarnas and Son wrote to Bailey rescinding the contract, stating that Tsarnas and Son had signed the contract “under the promise of Walter C. Bailey, that first party would provide sufficient logs to keep the sawmill of second party in full operation, or within the reasonable sawing capacity of said sawmill,” and went on to say that whereas the reasonable sawing capacity of the mill is in excess of 1,250,000 feet per month, Bailey had delivered not over 250,000 feet between June 15 and August 1. The letter was admitted without limitation of purpose, no such limitation having been requested. The letter stated that Tsarnas and Son would expect payment for lumber that would be manufactured from logs already delivered and shipped to Bailey.
 

 Bailey contends that the contract was breached by Tsarnas and Son in repudiating the contract by the August 1, 1955, letter, and also claims a number of other breaches which are set forth in a cross-complaint. On appeal, he lists four classes of such breaches as being undisputed: (1) inaccurate tallies and invoices lacking description of grades of lumber, (2) substitution of lots of lumber that were ordered, (3) underloading of cars, resulting in freight penalties against appellant, and (4) refusal to honor an option of Bailey’s to purchase lumber from logs obtained from other sources.
 

 However, some of them were disputed. It was testified that the substitutions were of equal grade, and were merely to prevent heavy costs of moving inaccessible piles of lumber. John Tsarnas testified that he could not sell his own logs to Bailey when the latter demanded them, as an exercise of the option, by letter of July 27, 1955, because Tsarnas, having sawn all of the Bailey logs, had to borrow money to keep the mill in operation, and had obligated himself to give the first refusal of his own logs to the lender.
 

 But as to these and to any remaining breaches, which may have been undisputed, the cross-complainant presented no evidence which would show an amount of damage resulting from any breach. There was testimony that appellant had lost money on the contract and that he lost the opportunity of profit and the amounts were given, but this was an overall calculation without specification as to any particular claimed breach or breaches. There was evidence from plaintiffs and cross-defendants that defendant’s loss resulted from lack of
 
 *337
 
 supply of logs, poor quality of logs, and the lack of a scaler who would be employed by Bailey to check the scaling by the loggers.
 

 We shall consider the points made by appellant, commencing with those which have to do with procedure and rules of evidence, but first we must dispose of a question raised by ourselves. The trial court caused a minute order to be entered ordering judgment for plaintiff on the amended complaint and that cross-complainant take nothing on his cross-complaint. ' Thereafter, the court signed findings of fact and conclusions of law, in which there were findings against the cross-complainant’s contentions as contained in the cross-complaint and a conclusion that defendant and cross-complainant on the cross-complaint or on the counterclaim are not entitled to recover. However, the judgment itself does not mention the cross-complaint. It simply decrees that plaintiffs have judgment against defendant for $11,553.20 plus interests and costs. Apparently no one noticed this in the argument on the motion for new trial or in presentation of the appeal.
 

 Judgment rendered on a complaint alone, unaccompanied by judgment on a pending cross-complaint, is not a final judgment, and appeal from it may be dismissed on motion. (Witkin, California Procedure, vol. 3, § 14, p. 2155;
 
 Nicholson
 
 v. Henderson, 25 Cal.2d 375, 381 [153 P.2d 945] ;
 
 Krug
 
 v.
 
 Meehan,
 
 106 Cal.App.2d 554 [235 P.2d 410].) However, this court on a former occasion has decided that because of the relaxation in the rules on appeal, of the strictures against premature appeals, the court may, in its discretion, where the intention of the trial court was clear, order judgment rather than send the case back for the performance of that act. In
 
 Gombos
 
 v.
 
 Ashe,
 
 158 Cal.App.2d 517 [322 P.2d 933], the court, writing by Mr. Justice Peters, cut through procedural delay by so acting. We have decided that, because the court expressed its decision in its order, because the findings and conclusions of law clearly show that the court’s decision was in favor of the cross-defendant, because the matter of the cross-complaint has been briefed on this appeal and no motion to dismiss has been made, we should, and we do, adopt the procedure of the Gombos case and we order judgment on the cross-complaint in favor of the cross-defendants and against cross-complainant on the cross-complaint, and in favor of plaintiffs and against defendant on the counterclaim.
 

 
 *338
 
 Appellant complains that the complaint is for services rendered prior to July 1, 1955, but the invoices upon which much of the unpaid amount is based were for services performed after August 1,1955. Amendment to the complaint to cover this defect was permitted at the end of the trial. The services rendered after August 1, 1955, were the subject of a large amount of evidence offered by both sides. It was well within the court’s discretion to allow the amendment. The case had been tried for eight days with these post-August 1, 1955 services at issue.
 

 Appellant contends that it was error to admit the special contract in evidence on pleading of a common count. Although the general rule forbids proving a special contract on such pleading, there is an exception where nothing remains to be done except payment by the defendant. (5 Cal.Jur.2d 539.)
 

 In this case nothing remained, on the plaintiffs ’ side of the proceeding, as distinguished from advancing on the cross-complaint,- except the compelling of payment. Or, if it is considered that performance by plaintiffs was imperfect, proceeding on a common count would seem proper.
 
 (Roseleaf Corp.
 
 v.
 
 Radis,
 
 122 Cal.App.2d 196, 207 [264 P.2d 964].) In any event, there was no prejudicial error.
 

 The next point raised by appellant is that the written contract is unambiguous and contains the entire agreement of the parties, and that it was error to admit parol evidence either to explain what was not equivocal or to produce terms which were not incorporated in the writing. The answer is that no objection was made at any point in the trial to parol evidence. Since both parties chose to litigate the whole matter, including subjects which might not otherwise have been considered (although the supplying of an adequate amount of logs might have been an inferred condition anyway), neither the parol evidence rule nor the statute of frauds excluded the oral testimony from consideration by the court.
 
 (Pao Ch’en Lee
 
 v.
 
 Gregoriou,
 
 50 Cal.2d 502, 506 [326 P.2d 135].) There was ample evidence that Bailey agreed to keep the mill supplied with logs, and to build a deck for the winter, that he failed to do so by his own omissions (this was the subject of much controversy, but the dispute has been resolved by the trial court), and that the breach was a material one, a subject that addresses itself peculiarly to the judgment of the trial court.
 
 (Smith
 
 v.
 
 Empire Sanitary Dist.,
 
 127 Cal.App.2d 63, 73 [273 P.2d 37].)
 

 
 *339
 
 We conclude from the foregoing that a judgment for plaintiff was supported by ample evidence.
 

 We defer discussion as to the amount of the judgment to the end, because consideration of the cross-complaint will throw light on the subject. As to the cross-complaint, upon alleged breaches of contract by Tsarnas and Son, we observe that it contains two classes of allegations: (1) those which charge breaches as causing damage to cross-complainant, such as misshipment of ears or underloading of cars resulting in penalties which had to be paid by cross-complainant, and (2) those which are defensive in nature, and which were contained in the counterclaim too, and were usable in defense against the complaint—charges that Tsarnas and Son failed to give tallies as required by the contract.
 

 As to the first class, cross-complainant presented no evidence as to the amount of damage claimed as the result of specific breaches. The proper measure of liability would be the value of what was rendered to him less damages resulting from breaches.
 
 (Roseleaf Corp.
 
 v.
 
 Radis, supra,
 
 122 Cal.App.2d 196, 207.) It is impossible to make a deduction for damages unless there is evidence of the amount thereof.
 

 However, as to the “defensive” breaches, there is no doubt that the failure of plaintiffs to supply defendant with proper tallies, as was required by the contract, may be used in defense against the amount claimed under the complaint, for we are compelled, for reasons which follow, to remand the case for retrial on the issue of the amount due to plaintiffs. At this point, then, we must set aside the finding that there were
 
 no
 
 breaches of contract by the plaintiffs, because it was uncontradicted that in many respects, they did not supply defendant with tallies and reports required by the contract.
 

 We turn now to the subject of the amount due to plaintiffs. Their claim is set forth in a bill of particulars but the only evidence offered in support of the claim was a ledger sheet, certain invoices, and testimony of MacMillan, accountant for plaintiffs, identifying these. It is on the ledger sheet, Plaintiffs’ Exhibit Number 1, that plaintiffs mainly rely, and they contend that judgment should be modified slightly downward to conform with the total on the ledger sheet. But the ledger sheet is erroneous demonstrably, and indeed, admittedly, by the testimony of MacMillan, the only witness who knew anything about it. It contains two items, invoices 6-4 and 6-5, totaling $1,303.98 which MacMillan had to concede had been paid. These items, admittedly paid, have never been
 
 *340
 
 withdrawn from the claim of plaintiffs, based upon the ledger sheet. Nor is that all. Defendant Bailey showed without contradiction that there had been a duplication of charges as to virtually every inventory unit in the bill of particulars for which a tally had been supplied to him. We do not mean only that Bailey's testimony, which was quite exact, was not refuted (MacMillan did not resume the witness stand after he had confessed the error of $1,303.98), but also that the documentary evidence shows outright duplications. Examples are given in the margin.
 
 *
 
 As to the other items in the “inventory account,” no tally had been given to Bailey, according to his testimony, although the contract required Tsarnas and Son to furnish such tallies.
 

 As an example of the erroneous condition of the account, there is this phenomenon: the bill of particulars contains eight invoices, plus other items totaling $7,170.70, and the total of the bill of particulars is $11,553.20. Plaintiffs’ Exhibit Number 1, the ledger sheet, contains the
 
 same eight
 
 invoices,
 
 plus two others
 
 of $1,303.98, plus other items totaling $7,400.14, somewhat
 
 more
 
 than the other items in the bill of particulars, but the total of the ledger sheet is
 
 less
 
 than that of the bill of particulars, or $11,266.49. A credit of $1,820.63 was allowed against the ledger account, but not against the bill of particulars.
 

 We believe that in order to arrive at a figure which will reflect the true account, it probably will be necessary for an accountant to be appointed by the court, for surely a busy trial judge should not be compelled to review a mass of poorly kept accounts. The judge already has had to decide
 
 *341
 
 upon 726 pages of testimony, with about five to ten new facts on each page. If the discrepancies were minor, we would let the matter stand, but they appear to be quite substantial, and we have no alternate but to reverse the judgment with direction to the trial court to try the subject of the account between the parties.
 

 In order to make plain what is to stand and what is to be done, we list the following; (1) the finding and conclusion that defendant breached the contract, stand, (2) the finding and conclusion that damages were not sustained by cross-complainant for the breaches set forth in the cross-complaint, and the judgment on the cross-complaint, stand, (3) the cause is remanded for the purpose of ascertaining the proper amount due to plaintiffs, and, because the burden of proof rests upon plaintiffs to show that amount, the lack of tallies, etc., although mentioned in the cross-complaint, may, of course, be material in the defense of plaintiffs’ claim.
 

 It is ordered that the judgment dated March 14, 1958 be and it is hereby amended by adding to paragraph numbered 1 thereof the following: “That cross-complainant take nothing by its cross-complaint against cross-defendant, and that defendant take nothing by its counterclaim against plaintiff.” The notice of appeal of May 21,1958, is declared to be a notice of appeal from the judgment as so amended.
 

 The judgment, as amended, on the cross-complaint and counterclaim is affirmed. Judgment on the complaint is reversed and the cause is remanded for the sole purpose of ascertaining the amount due to plaintiffs.
 

 Appellant to recover one-third of costs on appeal.
 

 Tobriner, Acting P. J., and Duniway, J., concurred.
 

 *
 

 Assigned by Chairman of Judicial Council.
 

 *
 

 Charged as unit of inventory at South Fork on 9-25-55.
 

 How charged a second time, invoiced as shipped from South Fork prior to 9-25-55.
 

 Unit 190
 

 ”
 
 334
 

 ”
 
 328
 

 ”
 
 312
 

 ”
 
 332
 

 ”
 
 351
 

 ”
 
 339
 

 ”
 
 333
 

 ”
 
 372
 

 ”
 
 319
 

 ”
 
 270
 

 ”
 
 202
 

 ”
 
 216
 

 Invoice 9-17
 

 ”
 
 9-30
 

 ”
 
 9-29
 

 ”
 
 9-29
 

 ”
 
 9-31
 

 ”
 
 9-30
 

 ”
 
 9-32
 

 ”
 
 9-30
 

 ”
 
 9-29
 

 ”
 
 9-29
 

 ”
 
 9-31
 

 ”
 
 9-30
 

 Charged twice as 216
 

 These are but a few examples. In many other cases units are charged as at South Fork, where uneontradieted testimony shows the units were previously shipped and paid for.