OHIO BELL TELEPHONE COMPANY, APPELLANT, *v.* BANCOHIO NATIONAL BANK, APPELLEE.

(No. 85AP-267 — Decided August 8, 1985.)

*Thomas A. Linton,* for appellant.

*Kincaid, Palmer & Randall* and *James R. Moats,* for appellee.

*Spengler, Nathanson, Heyman, McCarthy & Durfee* and *Truman A. Greenwood,* for First National Bank of Toledo.

MCCORMAC, J. This case is on appeal from a judgment of the Franklin County Court of Common Pleas that a check drawn on BancOhio National Bank (hereinafter "BancOhio") was "properly payable" out of the account of its customer, the Ohio Bell Telephone Company (hereinafter "Ohio Bell").

The stipulated facts are as follows: Ohio Bell drew a check in the amount of $57,510 on its account at BancOhio made payable to the order of Scannell Electrical Construction Company (hereinafter "Scannell") for work per-formed on behalf of Ohio Bell. Scannell delivered the check in accordance with a separate loan agreement to First National Bank of Toledo (hereinafter "First National") which credited the amount to Scannell's account. The check followed normal collection procedures where eventually BancOhio debited the account of Ohio Bell. Subsequently, mechanic's liens were filed against the property of Ohio Bell by subcontractors of Scannell. Upon learning of these mechanic's liens, First National applied the cash in Scannell's account to reduce Scannell's indebtedness to the subcontractors. Ohio Bell subsequently discovered that Scannell had failed to endorse the check, whereupon Ohio Bell requested BancOhio to credit the check to its account. BancOhio refused and Ohio Bell instituted this action. Having received an adverse judgment below, Ohio Bell has appealed and asserts the following assignments of error:

"1. The holding of the trial court that the subject check was properly payable and that, therefore, defendant-appellee BancOhio National Bank did not breach its contract with the plaintiff-appellant is contrary to law and against the manifest weight of the evidence.

"2. The holding of the trial court that any breach of contract which might have occurred would be excused as 'de minimus' [*sic*] is contrary to law and against the manifest [weight] of the evidence.

"3. The holding of the trial court that the plaintiff-appellant is not entitled to a recredit of its account to reverse the debit in the amount of the subject check is contrary to law and against the manifest weight of the evidence."

The first assignment of error raises the issue of whether the check was properly payable out of the account of Ohio Bell. R.C. 1304.24(A) (UCC 4-401[1]) states:

"As against its customer, a bank may charge against his account any item

which is otherwise properly payable from that account even though the charge creates an overdraft."

In the instant case, Ohio Bell drew a check payable to Scannell and mailed it to Scannell, but the check was not endorsed by Scannell. Nevertheless, the funds were received from Ohio Bell's bank and credited to the payee's account, and eventually the payee's indebtedness to First National was reduced by the check amount. In our view, whether a check is "properly payable," or, as appellant has phrased it, whether a bank breaches its contract with its customer, depends upon whether the bank has breached its duty to disburse funds to the named payee in accordance with the order of the drawer-customer. The order of Ohio Bell was to "pay" Scannell. The funds reached the named payee for the purpose intended: to compensate Scannell for work completed and to settle its account with its subcontractors. An endorsement in and of itself does not make a check properly payable. Concededly, it is in the best interest of the receiving banks to obtain the payee's endorsement because the effect of no endorsement is to prevent negotiation of the check (R.C. 1303.23 [UCC 3-202]), to deny holder status to subsequent possessors of the check (R.C. 1303.30 [UCC 3-301]), and to prevent obtaining the protected status as holders in due course (R.C. 1303.34 [UCC 3-305]). Furthermore, if a bank negligently fails to obtain an endorsement, it may be liable in negligence for any loss sustained as a proximate cause of the breach of its duty to obtain an endorsement. Here, the loss of Ohio Bell was proximately caused by its own failure to obtain the necessary affidavits and certificates listing subcontractors not yet paid, before authorizing payment to Scannell, and not from the failure to obtain an endorsement. Where the party intended by the drawer does, in fact, receive the funds, even if it is in the form of a credit or reduction of its debt,

no breach has occurred as between the bank and its customer as the bank has followed the order of its customer by paying the proper and named payee. In other words, payment to the payee or to someone authorized by the payee to receive the proceeds for the payee's benefit, albeit without formal endorsement, satisfies R.C. 1304.24(A) as a proper payment of the drawer's funds. The stipulated facts prove conclusively that the payee received payment as ordered by Ohio Bell. While the burden of proof to show payment to the proper party in the absence of an endorsement may be different, that issue is not before us. Appellant's contention that its contract with BancOhio for payment from its account to its payee allows only payment when presentment under R.C. 1303.59 (UCC 3-504) is made is rejected. While BancOhio, for its own protection, may have denied payment until an endorsement of the payee was obtained, or presentment was otherwise made in accordance with R.C. 1303.59, BancOhio still made "proper payment" from Ohio Bell's account as the term is used in R.C. 1304.24(A) and consequently was entitled to charge Ohio Bell's account.

Appellant relies upon *Cincinnati Ins. Co.* v. *First National Bank* (1980), 63 Ohio St. 2d 220 [17 O.O.3d 136]. In that case, the bank paid a check from the customer's account that was made payable to several payees without the endorsement of one of the payees in violation of R.C. 1303.15(B)(UCC 3-116[B]), which provides that an instrument payable to the order of two or more persons may be negotiated, discharged, or enforced only by all of them. The party who did not endorse the check did not negotiate, discharge, or enforce the check, with or without its endorsement. The distinguishing factor in this case is that the payee whose endorsement was missing received the payment as ordered. While there is broad language in the body of the decision in *Cincinnati*

*Ins. Co.* that indicates that a check is not properly payable under R.C. 1304.24 without the payee's endorsement, the language is in context to payment of a check in a different manner than ordered rather than exactly as ordered with the only defect being the oversight of the payee to endorse the check. *Cincinnati Ins. Co.* should not be interpreted as precluding establishment of proper payment by means other than an endorsement, as was established by the stipulations in this case. See *Brown* v. *Fifth Third Bank* (1983), 10 Ohio App. 3d 97. See, also, *Tonelli* v. *Chase Manhattan Bank* (1977), 41 N.Y. 2d 667, 670-671, 394 N.Y.Supp. 2d 858, 860-861; *Kosic* v. *Marine Midland Bank* (1980), 76 App.Div. 2d 89, 92, 430 N.Y.Supp. 2d 175, 177, affirmed (1981), 55 N.Y.2d 621, 446 N.Y.Supp. 2d 264; *First Natl. Bank* v. *Barrett* (1977), 141 Ga.App. 161, 233 S.E. 2d 24.

The cases on which appellant relies generally involve situations where the payee did not receive the proceeds as intended by the drawer. As pointed out in *Perini Corp.* v. *First Natl. Bank* (C.A. 5, 1977), 553 F. 2d 398, in a somewhat different context, but in language fully applicable here:

"* * * [T]here is no sacred relationship between an indorsement and the legal payment of a check.

"* * *

"* * * Interpretation of the [Uniform Commercial] Code, however, need not be wholly formalistic. Where missing or formally incomplete indorsements are concerned, it is consistent both with the drafters' emphasis on speeding the collection process and with ample customer protection to limit the liability of paying and collecting parties to the situation in which the intended payee did not receive the proceeds of the check." (Footnote omitted.) *Id.* at 413.

Here, the check was paid in accordance with the drawer's order and was properly payable.

The first assignment of error is overruled.

The second assignment of error asserts that the trial court found that any breach of contract would have been *de minimis*. Nowhere in the judgment entry can we detect this finding of the trial court. At any rate, it is unnecessary to reach the issue of whether the breach was *de minimis* since we have found no breach of contract.

The second assignment of error is overruled.

The third assignment of error challenges the holding of the trial court that Ohio Bell was not entitled to a recredit of its account. If the check was not properly payable, then Ohio Bell would have been entitled to a recredit of its account. *Cincinnati Ins. Co., supra.* Since the check was properly payable, Ohio Bell was not entitled to a recredit.

The third assignment of error is overruled.

For the foregoing reasons, the check was properly payable and BancOhio was entitled to debit the account of its customer, Ohio Bell. The assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

STRAUSBAUGH and STERN, JJ., concur.

STERN, J., retired Justice of the Ohio Supreme Court, assigned to active duty pursuant to Section 6(C), Article IV, Ohio Constitution.