[Nos. F008513, F008696. Fifth Dist. Nov. 9, 1988.]

AMERICAN NATIONAL BANK, Plaintiff and Respondent, v. GARY L. STANFILL et al., Defendants and Appellants.

**COUNSEL**

Fachin, McCartney & Twisselman, N. Thomas McCartney, Klein, Wegis & Duggan, Barry L. Goldner, David J. Cooper, Moore, Clifford, Wolfe, Larson & Trutner and Elizabeth Williams for Defendants and Appellants.

Young, Wooldridge, Paulden, Self, Farr & Griffin, David F. Rodriguez and Robert J. Self for Plaintiff and Respondent.

OPINION

SARKISIAN, J.*—

### INTRODUCTION

Appellants Gary Stanfill and James Nelson file separate appeals from a judgment in favor of American National Bank and against appellants following the granting of the bank's motion for summary judgment. Appellants seek reversal of the judgment enforcing appellants' obligations as makers of a promissory note in favor of payee bank. The appeals have been consolidated. As we explain below, the judgment in favor of the bank must be reversed.

### STATEMENT OF FACTS

In June 1984, Stanfill, Nelson and Mailloux developed a program to assist battered and abused women to be implemented through a nonprofit, charitable corporation known as Women In Need of Shelter Program (WINS). Revenue to maintain the program was to be generated through the operation of bingo games. Start-up funding was acquired through an unsecured loan from American National Bank in the amount of $100,000. The loan obligation is evidenced by a promissory note signed by Stanfill, Nelson and Mailloux as individuals. Loan proceeds were deposited directly into a WINS account at the bank.

It is not contended by any party that the loan was guaranteed by the WINS corporation. Representatives of the bank testified that the bank was unwilling to loan funds to the charitable corporation but would provide a loan to appellants backed by their personal guarantee. Appellants were specifically told by bank vice-president Gordon Jones that the bank was willing to loan them money solely on the strength of their financial statements and that the bank would look to them to repay the loan if the project failed. The express purpose of the loan was to consolidate two previous loans (one for $60,000 and one for $10,000) and to provide an additional $30,000 to complete bingo parlor set-up costs to raise funds for WINS. In connection with the $60,000 note, appellants executed a letter of understanding to the bank stating: "In consideration of your granting to us as individuals a loan in the amount of $60,000.00 it is hereby understood that American National Bank does not recognize the WINS organization as a Bankable source of repayment.

"We the undersigned fully recognize and agree that American National Bank considers us individually responsible for repayment of the indebtedness from our personal and/or business income."

---

* Assigned by the Chairperson of the Judicial Council.

Vice-president Jones was advised that the corporation's day-to-day operations would be conducted by Mailloux under the supervision of appellants, and that these three were the directors of the corporation. Appellants directed that loan proceeds be placed in an account in the name of WINS. The account was opened according to the directions of appellants. Appellants instructed Jones that only they and Mailloux would be authorized to sign checks payable on the WINS account. Appellants further instructed Jones that two signatures would be required on every check, one of which had to be that of Stanfill or Nelson.

Stanfill presented evidence in opposition to summary judgment that numerous checks paid from the WINS account were signed by Dorothy Hill, an *unauthorized* signatory. Stanfill denied that Hill was a director of the corporation, as indicated on a signature card produced by the bank, and refuted her authority to make withdrawals from the corporate account. The bank could not produce articles of incorporation or corporate resolutions verifying Hill's affiliation with WINS, though documentation of a corporate signatory's affiliation is ordinarily secured.

Copies of checks written on the WINS account revealed withdrawals of $78,850.12 on the authority of Mailloux and Hill alone. Many of the checks appear to have nothing to do with the operation of WINS, some directly payable to Mailloux and Hill, and others appear to have forged endorsements.

American National Bank filed a complaint on the promissory note against Stanfill and Nelson, as well as defendant Glenda Mailloux (not a party to this appeal), seeking judgment for the principal sum of $100,000, plus interest, attorney fees and costs. Stanfill and Nelson generally denied the allegations of the complaint. Both Stanfill and Nelson raised affirmative defenses of contributory negligence, plaintiff's breach of contract and breach of fiduciary duty, estoppel, waiver, consent and unclean hands. Both Stanfill and Nelson filed cross-complaints for declaratory relief, indemnity, and for an accounting against the bank as well as others. Stanfill also cross-complained for breach of contract.

The bank filed a motion for summary judgment on its complaint declaring that Stanfill, Nelson and Mailloux executed a promissory note in favor of American National Bank in the amount of $100,000, failed to make payment on the note according to terms, and were in default. Stanfill filed an opposition to the bank's motion which did not dispute execution of the note or default on the note, but asserted the existence of disputed facts having to do with respondent's mismanagement of a corporate bank account which was funded from the proceeds of appellants' loan.

The court below granted the bank's motion for summary judgment, finding that, "No defense to the obligation to pay the note has been presented. None of moving plaintiff's 'facts' has been disputed by any party." The ruling did not resolve appellants' pending cross-complaints against the bank. The court entered judgment for the bank and, on its own motion, stayed the judgment for the term prescribed in Code of Civil Procedure section 918.

Appellants contend, in opposing the motion, that triable issues of fact exist concerning whether or not the bank improperly and negligently honored checks drawn on the WINS account and breached the agreement to manage the account according to appellants' instructions. The bank contends that once the loan proceeds were deposited to the corporate account of WINS, the funds became the sole property of the corporation and any defense of negligence or breach of contract or claim of offset belongs to the corporation and not the individual appellants.

Both appellants appeal the entry of final judgment in favor of the bank, arguing that their affirmative defenses raise triable issues of fact, and that in any event no final judgment should have been entered pending resolution of the cross-complaints.

Both appellants Stanfill and Nelson will be treated identically for purposes of this appeal.

### DISCUSSION

### I.

### ENTRY OF JUDGMENT

■ Appellants argue that their affirmative defenses and cross-claims against respondent are identical and that if proven would tend to diminish or defeat the bank's right to recovery on the note or operate as a setoff pursuant to Code of Civil Procedure section 431.70. That section provides in pertinent part as follows: "Where cross-demands for money have existed between persons at any point in time . . ., and an action is thereafter commenced by one such person, the other person may assert in the answer the defense of payment in that the two demands are compensated so far as they equal each other, . . ." Appellants contend that the trial court should have granted an interlocutory judgment only, as the issues raised in the cross-complaints must first be determined to avoid multiple judgments in a single action.

Respondent argues that Code of Civil Procedure section 437c, subdivision (j), authorizes a "separate judgment" and that final judgment was

appropriately granted pursuant to the law set forth in *Worth* v. *Asiatic Transpacific, Inc.* (1979) 93 Cal.App.3d 849 [156 Cal.Rptr. 110].

It is well settled that litigation is not to be tried piecemeal and that the general rule is that there can be only one final judgment in an action. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 43, p. 67; *Bank of America* v. *Superior Court* (1942) 20 Cal.2d 697, 701 [128 P.2d 357].)

Code of Civil Procedure section 437c expressly prohibits appellate review of an order granting summary judgment prior to the termination of the action, "[e]xcept where a separate judgment may properly be awarded . . . ." (Code Civ. Proc., § 437c, subd. (j).) Although a practical exception is recognized where there are multiple parties and the order granting summary judgment disposes of all issues involving the appealing party, the interests of the parties must be distinct and severable from the general subject of the litigation to justify separate judgments. (*Etienne* v. *DKM Enterprises, Inc.* (1982) 136 Cal.App.3d 487, 489 [186 Cal.Rptr. 321]; 9 Witkin, Cal. Procedure, *supra,* Appeal, § 45, p. 69; § 49, p. 74.) A purported final judgment rendered on a complaint without adjudication of the issues raised by cross-complaint is not appealable absent some exception to the rule. (9 Witkin, Cal. Procedure, *supra,* Appeal, § 56, p. 78.) "Where the plaintiff recovers on his complaint and the defendant recovers on his cross-complaint, a single net judgment should be rendered." (7 Witkin, Cal. Procedure, *supra,* Judgment, § 39, p. 480.)

No exception to the rule appears from the facts here. ". . . [W]here the cross-complaint has been filed and the matter stated therein put in issue there is nothing that permits the rendition of two separate judgments where the parties to the complaint and the cross-complaint and the transaction out of which the action arose are identical." (*Crocker-Anglo Nat. Bank* v. *Kuchman* (1961) 194 Cal.App.2d 589, 591-592 [15 Cal.Rptr. 230]; see also *Fraser-Yamor Agency, Inc.* v. *County of Del Norte* (1977) 68 Cal.App.3d 201, 207 [137 Cal.Rptr. 118].) A money judgment in an action to enforce payment of a promissory note is not a final judgment, "[u]ntil all issues raised by the cross-pleadings against plaintiff are adjudicated and the action finally disposed of, . . . ." (*Bank of America* v. *Lamb Finance Co.* (1956) 145 Cal.App.2d 702, 715 [303 P.2d 86].)

The bank's reliance on *Worth* v. *Asiatic Transpacific, Inc., supra,* 93 Cal.App.3d 849 is not persuasive. In *Worth,* the court stated that ". . . the existence of an unresolved cross-complaint filed by appellants against respondent would not preclude the trial court granting a partial summary judgment which was appealable." (*Id.* at p. 856.) However, the appeal was not from the granting of summary judgment but from an order granting the respondent's motion for a new trial and vacating the summary judgment in

appellants' favor. The trial court's concession that an improper judgment was granted caused the appellate court to speculate that the trial court may have considered the judgment premature in light of a pending cross-complaint. The appellate court therefore gratuitously opined that the " 'new statute [Code Civ. Proc., § 437c] thus allows entry of a partial summary judgment before the remaining issues are tried. [Citation.]' " (*Ibid.*) The opinion sheds no light on what constitutes a properly awarded "separate judgment" nor points out the basis for an exception to the one judgment rule.

In *Fraser-Yamor Agency, Inc.* v. *County of Del Norte, supra,* 68 Cal.App.3d 201, a so-called "final judgment" disposed of the complaint and a cross-complaint but failed to resolve a complaint-in-intervention seeking the same relief as the cross-complaint. The appellate court amended the "final judgment" to include an order that the intervenor take nothing by his complaint, thereby creating an appealable judgment. (*Id.* at p. 208.) This device creates an artifical exception to the rule "where all issues necessary to a disposition of the remaining causes of action have been decided by the trial court . . . or can be decided as a matter of law on the basis of the record . . . ." (*DeGrandchamp* v. *Texaco, Inc.* (1979) 100 Cal.App.3d 424, 433 [160 Cal.Rptr. 899].)

Here, appellants' defenses to the complaint raise issues identical to those raised by way of cross-complaint. The issues raised in the cross-complaints can be decided as a matter of law on the basis of the record and accordingly, in the interests of justice and to prevent unnecessary delay and hardship, the judgment should be amended to include an order that appellants are entitled to no relief against American National Bank as prayed for in their respective cross-complaints. (*Gombos* v. *Ashe* (1958) 158 Cal.App.2d 517, 524-525 [322 P.2d 933]; *Tsarnas* v. *Bailey* (1960) 179 Cal.App.2d 332, 337 [3 Cal.Rptr. 629]; *DeGrandchamp* v. *Texaco, Inc., supra,* 100 Cal.App.3d 424, 432-433.) The judgment as amended is an appealable judgment which will be decided on the merits.

## II.

### TRIABLE ISSUES OF FACT REMAIN REGARDING APPELLANTS' STATUS AS CUSTOMERS.

■ A summary judgment proceeding permits a party to show that material factual claims arising from the pleadings are not in dispute and thus need not be tried. (*Powell* v. *Standard Brands Paint Co.* (1985) 166 Cal.App.3d 357, 366 [212 Cal.Rptr. 395].) ■ The appellate court makes its own independent determination of the construction and effect of supporting and opposing affidavits and declarations. (*Taylor* v. *Fields* (1986)

178 Cal.App.3d 653, 660 [224 Cal.Rptr. 186].) It is this court's task to determine whether the moving party has established facts which negate the opponent's claims and justify a judgment in movant's favor, and whether the existence of a triable, material, factual issue has been shown. (*Zuckerman* v. *Pacific Savings Bank* (1987) 187 Cal.App.3d 1394, 1400-1401 [232 Cal.Rptr. 458].) ■ The record is convincing that substantial questions remain regarding appellants' status as customers, which would give rise to triable issues of fact with regard to the defense of offset.

■ A note is an instrument which by its terms purports to evidence an unconditional promise to pay. (*McCullough Tool Company* v. *C.I.R.* (9th Cir. 1963) 318 F.2d 790, 795.) ■ It is undisputed that the $100,000 note was duly executed and under its terms, due and unpaid. There are, however, defenses which operate to discharge the maker of liability on a note or to defeat enforcement of the obligation. Claims of a setoff can be raised by way of affirmative defense as well as cross-complaint. (1 Cal. Civil Procedure Before Trial (Cont.Ed.Bar 1977) § 12.17, p. 436; Code Civ. Proc., § 431.70.) ■ Under Code of Civil Procedure section 431.70, cross-demands for money between two persons may be set off against each other. Setoff is an appropriate defense to an action on a promissory note. (*Johnstone* v. *Morris* (1930) 210 Cal. 580, 587 [292 P. 970].)

■ Here, respondent seeks to recover appellants' monetary obligation on a promissory note. Appellants have raised various affirmative defenses and have produced evidence in opposition to summary judgment sufficient to raise triable issues of fact with respect to entitlement to a setoff based on respondent's alleged failure to manage the WINS account according to appellants' instructions.

Clearly, numerous factual issues were raised in the court below concerning the bank's management of the WINS account. Appellants charged that the account was mismanaged when respondent honored checks drawn by unauthorized persons, honored documents with forged indorsements and honored instruments payable to fictitious payees. These acts were contrary to appellants' instructions and violative of the duties inherent in the depositor/bank relationship. Mismanagement allegedly resulted in a loss of more than $78,000. Appellants argue that losses attributable to the bank's wrongful conduct should offset any obligation on the note.

■ Division 4 of the California Uniform Commercial Code is entitled "Bank Deposits and Collections" and defines the rights and liabilities of a bank and its customer. Section 4401, subdivision (1), provides that as between the drawee bank and the depositor, losses from a forged or unauthorized signature are borne by the bank "since payment not made pursuant to directions of a 'properly payable' order cannot be charged to the depositor's

account." (*Fireman's Fund Ins. Co.* v. *Security Pacific Nat. Bank* (1978) 85 Cal.App.3d 797, 804 [149 Cal.Rptr. 883]; see also *Basch* v. *Bank of America* (1943) 22 Cal.2d 316 [139 P.2d 1].) The bank is bound, at its peril, to determine the genuineness of the instrument and its indorsements. (*Security Comm. & Sav. Bank* v. *Southern Trust & Comm. Bank* (1925) 74 Cal.App. 734, 740-741 [241 P. 945].) A bank's management of a customer's account has been actionable where the bank facilitated the conversion of a customer's funds by a third party. (*Tedesco* v. *Crocker National Bank* (1983) 148 Cal.App.3d 1211, 1215-1216 [196 Cal.Rptr. 534].)

It is clear that a bank "customer" is entitled to seek reimbursement from the bank for wrongfully honored checks. Such a customer would be entitled to raise his or her claim as a setoff in defense to an action on a note by a payee bank. ■ The remaining question to be addressed here is whether appellants, as individuals, can be considered respondent's "customers" so as to entitle them to raise a claim of offset for alleged losses resulting from improper management of the corporation's account.

Appellants contend that determining whether they may be characterized as "customers" of the bank standing in a contractual relationship with American National is a question of fact, as is the issue of their entitlement to an offset under California Uniform Commercial Code section 4401.

Citing *Basch* v. *Bank of America, supra,* 22 Cal.2d 316, 321, and California Uniform Commercial Code sections 4401, subdivision (1), 4402, 4104, subdivision (e), and 1201, the bank claims that once the loan proceeds were deposited to the corporate account of WINS, the funds became the sole property of the corporation, precluding appellants from claiming an offset for the loss of loan proceeds. The bank's authorities, however, fail to establish, as a matter of law, that appellants have no rights as "depositors" and/or "customers" under the Uniform Commercial Code.

Provisions of the Uniform Commercial Code concerning bank deposits and collections govern the facts now under review. California Uniform Commercial Code section 4104, subdivision (1)(e), defines a "customer" as "any person having an account with a bank or for whom a bank has agreed to collect items and includes a bank carrying an account with another bank." There is a dearth of authority construing that particular provision. Authorities commenting on the identical Uniform Commercial Code provision (§ 4104, subd. (1)(e)) have noted that a "customer" will be a "drawer" of a check, a "maker" of a note or perhaps a "payee" or "indorsee." (White & Summers, Uniform Commercial Code (2d ed. 1980) § 17-1, p. 649.) An "item" under the definition is "any instrument for the payment of money . . . ." (Cal. U. Com. Code, § 4104, subd. (1)(g).) Personal checks are the most common "items." (White & Summers, Uniform Commercial Code,

*supra,* § 17-1, p. 650.) The relationship between a bank and its customer is a contractual one, the bank becoming the "debtor" of the depositor for the money deposited. (*Danning* v. *Bank of America* (1984) 151 Cal.App.3d 961, 969 [199 Cal.Rptr. 163].)

It is well settled that a corporation is a separate and distinct entity with separate and distinct rights and liabilities. (*In re John Koke Co.* v. *Demory* (9th Cir. 1930) 38 F.2d 232, 233.) Recognizing the separateness of a corporate entity, the appellate court in *Kendall Yacht Corp.* v. *United California Bank* (1975) 50 Cal.App.3d 949 [123 Cal.Rptr. 848] addressed the question of whether the wrongful dishonor of a corporation's check entitles individual officers and shareholders of the corporation to a cause of action for damages. Because the section 4104, subdivision (1)(e) definition of "customer" applies to the statutory provision regarding dishonor of checks (Cal. U. Com. Code, § 4402), as well as the provision restricting the bank's charge of any but "properly payable" items (Cal. U. Com. Code, § 4401, subd. (1)), the reasoning in *Kendall* is instructive here.

Lawrence and Linda Kendall were officers of an undercapitalized corporation which maintained a corporate checking account at United California Bank. The corporation's account became overdrawn and the Kendalls executed a guaranty assuming personal liability for the corporation's debts up to a certain amount. The bank reneged on an agreement to loan funds to the corporation and discontinued honoring overdrawn checks. The Kendalls sued for wrongful dishonor of overdrafts claiming damages for attorney fees, emotional distress, and damage to reputation. On appeal, the bank argued that the Kendalls did not have a cause of action for dishonor of a *corporation* check. The bank relied on *Loucks* v. *Albuquerque National Bank* (1966) 76 N.M. 735 [418 P.2d 191], which held that under Uniform Commercial Code section 4-402 individuals doing business as partners could not recover for damages to their personal credit, good reputation and business standing which resulted from the wrongful dishonor of checks written on a *partnership* account.

The *Kendall* court refused to apply the strict construction of "customer" employed by the New Mexico Supreme Court: "It is not clear whether the New Mexico court meant to say that in every case where an account stands in the name of a partnership or a corporation, only the business entity may recover under section 4-402, regardless of the circumstances. Such a narrow and technical reading of the statute and the term 'customer' does not seem warranted. The purpose of the statute—to hold banks accountable for damages proximately caused by wrongful dishonors—is more readily served by

allowing a flexible and reasonable interpretation of the word 'customer.'" (50 Cal.App.3d at p. 956.)[1]

The *Kendall* court evaluated the relationship of the individual plaintiffs to the corporate account and concluded that plaintiffs were as much "customers" of the bank within the contemplation of the statute as was the corporation.

". . . [T]he Bank looked directly to the Kendalls to satisfy the obligations of the Corporation. They were required to execute a personal guarantee of the initial $14,000 loan, . . . The Kendalls alone were controlling its financial affairs and were personally vouching for its fiscal responsibility. Not only the Bank, but also the suppliers and employees of the Corporation knew that this was the situation. . . . Thus it was entirely foreseeable that the dishonoring of the Corporation's checks would reflect directly on the personal credit and reputation of the Kendalls and that they would suffer the adverse personal consequences which resulted when the Bank reneged on its commitments. Under these circumstances we would elevate form over substance if we were to hold that the wrong defined by section 4402 was done only to the Corporation and that the Kendalls as individuals could not recover therefor." (*Ibid.*)

In opposition to respondent's motion for summary judgment, Stanfill set forth numerous undisputed facts outlining the relationship between the $100,000 loan and the WINS bank account. In light of the holding in *Kendall Yacht Corp.* v. *United California Bank, supra,* 50 Cal.App.3d 949, these facts must be considered: (1) appellants were directors of the WINS corporation; (2) appellants were required to execute a personal guaranty of the loan initially funding the project; (3) appellants were responsible for directing deposit of loan proceeds into a corporate account at the bank and providing instructions for opening the account, including the requirement of two signatures on all drafts, one signature to be Stanfill or Nelson; (4) the bank represented that "if the project failed" it would look directly to appellants for payment on the note; and (5) Stanfill, as president of Mobile Equipment Company, had a history of commercial dealings with the bank. All of the foregoing demonstrates that it was entirely foreseeable that appellants would suffer adverse consequences if the WINS account was not managed according to instructions.

The *Kendall* court noted: "We would certainly not hold as a general proposition that the shareholders or officers of a corporation could recover

---

[1] Another jurisdiction interpreting Uniform Commercial Code section 4104, subdivision (1)(e), similarly has looked to the relationship of the parties rather than applying a strict standard that a "customer" have an account with the bank in his or her name. (*Columbian Peanut Company* v. *Frosteg* (5th Cir. 1973) 472 F.2d 476.)

under section 4402 for the wrongful dishonor of a corporation check. Here, however, it is difficult to avoid the conclusion that Mr. and Mrs. Kendall were as much 'customers' of the Bank within the contemplation of the statute as was the Corporation." (*Id*. at p. 956.) We, too, do not hold as a general proposition that shareholders or officers of a corporation could recover for mishandling of a corporate account. Nevertheless, as in *Kendall*, whether or not appellants were "customers" of the bank pursuant to California Uniform Commercial Code section 4104, subdivision (1)(e), and entitled to have only "properly payable" items charged against the WINS account pursuant to section 4401, subdivision (1), is a proper inquiry. This is a factual question which should be addressed by the trial court. As "customers," appellants were proper parties to raise claims of negligence and breach of contract against respondent, and whether the bank negligently paid forged or unauthorized checks amounting to an offset is a question of fact. (*Basch* v. *Bank of America, supra,* 22 Cal.2d 316, 323.) Accordingly, the trial court erred in granting summary judgment in favor of respondent.

### DISPOSITION

The designated "final judgment" is reversed with directions to the trial court to proceed in accordance with the views herein expressed. Appellants are awarded their costs on appeal.

Hamlin, Acting P. J., and Ardaiz, J., concurred.