952 F.2d 406
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
COLONIAL PACIFIC CORP., Plaintiff-Appellant,
v.
CONNECTICUT NATIONAL BANK, Defendant-Appellee.
 No. 90-35652.
 United States Court of Appeals, Ninth Circuit.
 Submitted Jan. 6, 1992.*
Decided Jan. 9, 1992.
 
 Before JAMES R. BROWNING, D.W. NELSON and CANBY, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Colonial Pacific Corp. (Colonial) seeks to recover from its bank, Connecticut National Bank (CNB), the value of a check it wrote payable to "Thomas Refrigeration and Air Conditioning." The check was endorsed[1] "Jeff Thomas/Thomas Refrigeration," and CNB paid out on the check from Colonial's account to Jeff Thomas' assignees. Jeff Thomas has no connection with Thomas Refrigeration and Air Conditioning (TRAC),[2] and Colonial seeks to hold CNB liable for paying out on a fraudulent endorsement. Because we conclude that Jeff Thomas and not TRAC was the intended payee, and therefore that the check was "properly payable" within the meaning of U.C.C. § 4-401, we affirm the grant of summary judgment for CNB.
 
 
 3
 This Court reviews a district court's grant of summary judgment de novo. T.W. Elec. Service v. Pacific Elec. Contractors, 809 F.2d 626, 629-30 (9th Cir.1987). Summary judgment is appropriate only if "there is no genuine issue of material fact" and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).
 
 
 4
 Connecticut law governs this Oregon diversity action because CNB is located in Connecticut. See U.C.C. § 4-102(2), Conn.Gen.Stat. § 42a-4-102(2), Ore.Rev.Stat. 74.1020(2). Connecticut has adopted the Uniform Commercial Code (U.C.C.). Under the U.C.C., a bank may charge the account of its customer only for items which are "properly payable." U.C.C. § 4-401(1), Conn.Gen.Stat. § 42a-4-401(1). A bank is strictly liable to its customer for funds it pays out over a check not "properly payable." See, e.g., Lincoln Nat'l Bank & Trust Co. v. Bank of Commerce, 764 F.2d 392, 395-97 (5th Cir.1985); American Nat'l Bank v. Stanfill, 205 Cal.App.3d 1089, 252 Cal.Rptr. 861, 865 (1988). Thus, we must determine whether the check as endorsed was "properly payable."
 
 
 5
 Colonial first advocates a per se rule: that courts not look beyond the "pay-to" order on the check in determining whether an endorsement is proper and therefore whether the payee bank is liable. Whatever the merits of such a rule, there is no evidence that Connecticut has adopted it. Indeed, a number of courts have been willing to overlook defects in the endorsement ranging from spelling errors, see British Caledonian Airways v. First State Bank, 819 F.2d 593, 597-98 (5th Cir.1987), to endorsement as a sole proprietorship rather than a corporation, see Coulter Electronics, Inc. v. Commercial Bank of Cobb County, 727 F.2d 1078, 1079-80 (11th Cir.1984), to endorsement in a completely different name, see Perini Corp. v. First Nat'l Bank of Habersham County, 553 F.2d 398, 412-13 (5th Cir.1977), to a failure to endorse at all, see Ohio Bell Telephone Co. v. BancOhio Nat'l Bank, 27 Ohio App.3d 8, 499 N.E.2d 327, 330 (1985). We are not free to create for Connecticut a rule other U.C.C. jurisdictions have rejected.
 
 
 6
 Instead, the rule is that a bank is not liable for paying out on an endorsement, even if forged, if the money is received by the intended payee for the intended purpose. See, e.g., First City Nat'l Bank v. FDIC, 782 F.2d 1344, 1348 (5th Cir.1986); Bank One v. Hochstadt, 515 So.2d 332, 333 (Fla.App.1987); Eatinger v. First Nat'l Bank of Lewiston, 199 Mont. 377, 649 P.2d 1253, 1255 (1982). Here, Jeff Thomas, rather than TRAC, received the money to pay for the coolers which were built and installed in Norman's Grocery. The undisputed admissible facts in the record establish, however, that in the circumstances of this case Jeff Thomas and not TRAC was the intended payee.
 
 
 7
 It was Jeff Thomas who contacted Colonial's broker and offered to sell the cooling units to Colonial, which in turn would lease them to Norman's grocery. Although Jeff Thomas used a TRAC invoice, when Colonial called its broker to get a mailing address for "TRAC," the broker gave it Jeff Thomas' address at the Normans' main store. Jeff Thomas also wrote "Thank you, Jeff Thomas" on the TRAC invoice. Jeff Thomas, and not TRAC, actually supervised the construction and installation of the cooling units at Norman's grocery.[3] In his affidavit, TRAC president Thomas Chancey disclaimed any connection whatsoever to the transaction, and stated that TRAC had no interest in the check made out to TRAC. Thomas, on the other hand, had provided the cooling units for which Colonial was paying. It would defy all logic to conclude that TRAC rather than Jeff Thomas was the intended payee merely because the check was made out to TRAC, the name on the invoice.
 
 
 8
 We think the reasoning of the Fifth Circuit in Perini is persuasive. In that case, someone named Quisenberry had endorsed and appropriated checks made out to "Quisenberry Contracting Co." and "Southern Contracting Co." The court wrote that:
 
 
 9
 [A] bank does not become accountable for every loss that would not have occurred had the bank returned the check for a proper indorsement. Rather, the bank becomes accountable for any manifestation of the danger evidenced by an incomplete indorsement; i.e. that some person with a superior claim to the rights created by the instrument will surface and demand payment.
 
 
 10
 That danger has not manifested itself in the case at bar. There is not the slightest hint in the record that entities named "Southern Contracting Co." and "Quisenberry Contracting Co." or their transferees are loitering in the lobbies with a claim to these checks. As far as this litigation is concerned, the proceeds of the checks went to the payees designated on the face of the instruments.
 
 
 11
 553 F.2d at 412 (dictum).
 
 
 12
 As in Perini, there is no danger that Colonial will have to pay twice for the cooling units. Indeed, TRAC has expressly disclaimed any interest in receiving payment from Colonial. Jeff Thomas was the supplier that Colonial intended to pay. The fact that Colonial's interest in the units is now jeopardized by Norman's Grocery's subsequent bankruptcy is not CNB's fault. Colonial seeks a windfall from CNB because of the circumstance that the check was not endorsed as written. It is not entitled to such a benefit.
 
 
 13
 Because we find that Jeff Thomas was the intended payee, and therefore that the check was properly payable, we have no occasion to consider the two other grounds advanced by CNB in favor of the judgment below. The district court's grant of summary judgment in favor of CNB is affirmed.
 
 AFFIRMED
 
 
 *
 The panel unanimously finds this case suitable for submission without oral argument pursuant to Ninth Cir.Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this Circuit except as provided by Ninth Cir.Rule 36-3
 
 
 [1]
 There is a split among the circuits concerning the proper spelling of "endorsement." The older view is that the proper spelling is "indorsement." We have chosen "endorsement" because the much-maligned Third Edition of Webster's New International Unabridged Dictionary lists "indorse" as a variant of "endorse," rather than the other way around. Compare id. at 749 with id. at 1154
 
 
 [2]
 This at least is the testimony of one Thomas J. Chancey, the principal of TRAC
 
 
 [3]
 On appeal, Colonial makes much of evidence which it says casts doubt on whether Jeff Thomas actually built and installed the cooling units himself. This evidence does not create a genuine issue of material fact. It is undisputed that Jeff Thomas was the "supplier" of the cooling units. He is therefore the one Colonial would be expected to pay, even if he subcontracted some of the work to other parties. While the evidence of Jeff Thomas' role may be disputed, therefore, the dispute is not material in deciding whether Thomas was the intended payee